DECISION.
Plaintiff-appellant Southwest Ohio Regional Transit Authority (SORTA) provides public transportation in Cincinnati and parts of Hamilton County. Defendant-appellee Amalgamated Transit Union, Local 627 ("the Union") represents certain SORTA employees, including bus drivers, mechanics and repairpersons. SORTA and the Union have been parties to a series of collective-bargaining agreements. The pertinent collective-bargaining agreement ("the CBA") was in effect from January 8, 1994, through January 7, 1997, and was extended through May 12, 1997. Section 3(b) of the CBA stated:
 There shall be no discharge, suspension or other disciplinary action without sufficient cause or without notification to employee of reason, in writing.
On February 1, 1995, SORTA revised its existing "Drug and Alcohol Policy" in order to comply with federal regulations. The drug and alcohol policy was unilaterally promulgated by SORTA pursuant to the Management Rights Provision and the Operation of Rules Provision of the CBA. SORTA's drug and alcohol policy, in accordance with Department of Transportation regulations, mandated random drug testing of safety-sensitive employees. Under the federal regulations and SORTA's policy, safety-sensitive employees included those employees responsible for (1) operating a revenue service vehicle; (2) operating a nonrevenue service vehicle when required to be operated by a holder of a commercial driver's license; and (3) maintaining a revenue service vehicle or equipment used in revenue service. In its drug and alcohol policy, SORTA adopted federal testing guidelines, but did not adopt federal disciplinary guidelines that allowed for progressive discipline of an employee testing positive for drugs or alcohol. Under SORTA's policy, an employee who tested positive was terminated.
SORTA's drug and alcohol policy defined a "positive test" as "a prohibited substance appearing in the employee's urine specimen" that surpassed the thresholds established by the federal government. Jewish Hospital Laboratory Services (Jewish Hospital) conducted SORTA's random drug tests. The safety-sensitive employees chosen for testing were randomly selected by Jewish Hospital. Pursuant to SORTA's policy, if an employee with a drug or alcohol problem came forward prior to receiving notice of a drug or alcohol test, an opportunity for rehabilitation was extended to the employee. SORTA's employees were notified of the implementation of the February 1, 1995, drug and alcohol policy.
Marc Sundstrom, an eighteen-year SORTA employee, was working as a bus repairperson. His position was classified as safety-sensitive under federal regulations and SORTA's drug and alcohol policy. Sundstrom's duties included (1) repairing and maintaining buses; (2) road-testing buses; and (3) operating other vehicles, such as forklifts and parts trucks, for which he was required to hold a commercial driver's license.
On February 10, 1997, Sundstrom reported to work, clocked in and was on duty when he was notified that he had been selected for a random drug-screen test. He was transported to Jewish Hospital about 7:30 a.m. Sundstrom tested positive for marijauna. Sundstrom's urine sample was then subjected to a confirmatory test, which was also positive. A "split sample" of Sundstrom's urine analyzed by a separate laboratory also tested positive for marijauna. Sundstrom was terminated on February 13, 1997.
Sundstrom filed a grievance under the CBA. The grievance was denied through the preliminary steps. The grievance proceeded to arbitration. The three-member arbitration board, with one member dissenting, held that pursuant to the CBA's "just cause" provision, SORTA was required to consider "mitigating factors," such as Sundstrom's eighteen-year work record, before terminating him. Based upon the mitigating factors, the board determined that Sundstrom should be reinstated, with certain conditions.
SORTA filed a complaint and application in the court of common pleas to vacate the arbitration award. The Union filed an application to confirm the arbitration award. Both parties filed motions for summary judgment. The trial court granted the Union's motion and confirmed the arbitration award reinstating Sundstrom. SORTA has appealed. We have sua sponte removed this case from the accelerated calendar and placed it on the court's regular calendar.
SORTA's sole assignment of error alleges:
 The trial court erred in overruling plaintiff's motion for summary judgment on plaintiff's claim that the arbitration award violates public policy and fails to draw its essence from the collective-bargaining agreement.
In accordance with the federal policy of settling labor disputes by arbitration, judicial review of labor arbitration awards is narrow, and deference is to be given to an arbitrator's findings. See United Paperworkers Internatl. Union,AFL-CIO v. Misco, Inc. (1987), 484 U.S. 29, 108 S.Ct. 364; UnitedSteelworkers of America v. Enterprise Wheel Car Corp. (1960),363 U.S. 593, 80 S.Ct. 1358; Goodyear Tire Rubber Co. v. Local200 (1975), 42 Ohio St.2d 516, 330 N.E.2d 703. A court may not, however, enforce an arbitration award that is contrary to public policy. See W.R. Grace Co. v. Local 759, Internatl. Union ofthe United Rubber, Cork, Linoleum Plastic Workers of America
(1983), 461 U.S. 757, 103 S.Ct. 2177. A court may refuse to enforce an arbitrator's interpretation of a provision in a collective-bargaining agreement, where the agreement, as interpreted, would violate some explicit, well-defined and dominant public policy, to be ascertained by reference to the laws and legal precedents, and not from general considerations of supposed public interest. Id.; see Southwest Ohio RegionalTransit Authority v. Amalgamated Transit Union, Local 627 (Sept. 28, 1994), Hamilton App. No. C-930423, unreported (SORTA I). Generalizations about safety are not enough to establish public policy. See United Paperworkers Internatl. Union, AFL-CIO v.Misco, Inc., supra; SORTA I, supra.
The Ohio legislature has recognized the right of courts to refuse to enforce an arbitrator's award pursuant to R.C.2711.10. R.C. 2711.10(D) provides that a court may vacate an arbitration award if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made." An arbitrator exceeds his or her power when the arbitrator's award fails to draw its essence from the collective-bargaining agreement. See SORTA I, supra;Southwest Ohio Regional Transit Authority v. Amalgamated TransitUnion, Local 627 (Dec. 31, 1998), Hamilton App. Nos. C-970967, C-971118 and C-980044, unreported (SORTA II). An arbitrator's award draws its essence from a collective-bargaining agreement "when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." Mahoning Cty. Bd. of Mental Retardation andDevelopmental Disabilities v. Mahoning Cty. TRM Edn. Assoc.
(1986), 22 Ohio St.3d 80, 488 N.E.2d 872, paragraph one of the syllabus.
An arbitrator's award departs from the essence of a collective-bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot rationally be derived from the terms of the agreement.
Ohio Office of Collective Bargaining v. Civil Service EmployeesAssoc., Local 11, AFSCME, AFL-CIO (1991), 59 Ohio St.3d 177,572 N.E.2d 71, syllabus.
In addition to these principles of labor arbitration is a generally accepted principle in Ohio that a contract which is against public policy will not be enforced. Gugle v. Loeser
(1944), 143 Ohio St. 362, 55 N.E.2d 580.
SORTA I, supra; see SORTA II, supra. The resolution of the public-policy question is reserved to the courts. See W.R. Grace Co. v. Local 759, supra.
The duty of common carriers to exercise the highest degree of care, consistent with the practical operation of the line, to ensure the safety of their passengers and the rest of the travelling public is a valid, compelling and clearly established public policy. See Dietrich v. Community Traction Co. (1964),1 Ohio St.2d 38, 203 N.E.2d 344; SORTA I, supra; SORTA II, supra. There is a difference between an employee endangering only himself or herself, and an employee endangering members of the general public. See SORTA I, supra. Ohio has a clear public policy against the impairment of transportation workers on the job. SeeSORTA II, supra.
In Cleveland Bd. of Edn. v. Internatl. Brotherhood ofFiremen Oilers, Local 701 (1997), 120 Ohio App.3d 63,696 N.E.2d 658, the Eighth District Court of Appeals upheld the trial court's decision vacating an arbitrator's award that had reinstated Timothy Baker, a bus mechanic's helper who had tested positive for cocaine. Baker, who was a ten-year employee with a good disciplinary record, assisted in the repair and maintenance of school buses. He was required to hold a commercial driver's license as a condition of his employment.
The Cleveland Board of Education had adopted the January 1, 1995, federal guidelines for random drug and alcohol testing of employees. The board's policy stated that an individual testing positive for drugs or alcohol would be subject to "disciplinary action including termination." The board also had a policy of helping employees who voluntarily came forward with rehabilitation. Baker tested positive for cocaine while on duty, and he was terminated.
The arbitrator found that the board did not have the requisite just cause to discharge Baker, and ordered him reinstated with a suspension of one month without pay and a drug-free probationary period of two years. The arbitrator determined that (1) the collective-bargaining agreement, which permitted discipline for just cause, did not include specific language permitting the board to terminate employees who tested positive on a drug test; (2) The board had not previously discharged other employees who had tested positive for drugs or alcohol; (3) the board's policy did not mandate discharge, since it provided that employees were subject to "disciplinary action including termination;" (4) absent contractual language permitting the board to terminate an employee for a positive drug test, the just-cause standard was not met; and (5) there was no evidence that Baker had ingested the drug while on the job.
In vacating the award, the common pleas court determined that (1) the arbitrator had exceeded his authority by failing to draw the essence of his award from the collective-bargaining agreement; and (2) the award violated the clear mandates of Ohio and federal public policy. The Eighth Appellate District affirmed the common pleas court's decision, holding that the enforcement of the award was "contrary to an explicit, well defined and dominant public policy of state and federal law to suppress illegal drug use among transportation employees." The court, quoting SORTA I, recognized that "removing drug users from positions repairing school buses is likewise consistent with the Board's duty to use the `highest degree of care to ensure the safety of its passengers.'" The court also noted that the rehabilitative purpose behind a "zero tolerance" program would be ignored and the program would be virtually ineffective if the offending employee caught through a random drug test was treated the same as an employee who voluntarily came forward and asked for help.
We agree with the reasoning of the Eighth District Court of Appeals, and we hold that reinstating Sundstrom, a safety-sensitive employee who tested positive for marijauna while on the job, would violate the explicit, well-defined and dominant public policy to ensure the safety of the passengers of common carriers and the general public by suppressing illegal drug use among transportation employees. The assignment of error is sustained. The judgment of the trial court is reversed and the cause is remanded with instructions to the trial court to vacate the arbitration award, and for further proceedings consistent with law and this decision.
Judgment reversed and cause remanded.
 Doan, P.J., Hildebrandt and Winkler, JJ.