OPINION
On September 3, 1997, appellant, the Streetsboro Part-Time Firefighters Organization, and appellee, the city of Streetsboro, entered into a collective bargaining agreement, which provided for reimbursement of part-time firefighters by the city for certain educational expenses and resolution of grievances through final and binding arbitration.
Article VI(G) of the agreement, which spells out the grievance procedures, sets forth a detailed process by which an arbitrator is selected. It provides for the arbitrator's authority and appeal procedures as follows:
 "The arbitrator shall limit his decision strictly to the interpretation, application, or enforcement of specified Articles of this Agreement. He may not modify or amend this Agreement.
"* * *
 "The decision of the arbitrator shall be final and binding on the employee, that Organization and the City, and there shall be no appeal to a Court of competent jurisdiction or any agency of the State of Ohio."
Article XI provides for travel allowances as follows:
 "A. Employees who travel on authorized City business for training or professional development purposes, approved by the Fire Chief and City Safety Director as being in the best interest of the City, shall be reimbursed for reasonable travel expenses, including air, rail or bus fares, parking, lodging and meals. The City Safety Director may establish maximum reimbursable limits for travel expenses.
* * *
 "C. In the event that an employee receives prior approval by the Fire Chief to use his personal vehicle for the purpose of City business, such employee will be reimbursed at the per mile rate set by City Ordinance."
Article XV provides for compensation of employees for obtaining and maintaining certain training as follows:
 "All employees are responsible for maintaining any certifications or professional designations currently in effect at the time of the execution of this contract and any certifications or designations obtained after the execution of this contract [including] * * *:
 "D. Emergency Medical Training Paramedic (EMT-P). * * *
 "* * * The employee may enroll in City offered courses when such courses are made available. When such courses are not made available by the City, the employee shall pay for any tuition costs, continuing education cost and necessary travel related expenses necessary for the maintenance of the certifications. The City will not be obligated for costs or compensation for training courses to attain or maintain certifications, except as follows; Required Emergency Medical continuing education will be paid for by the City, at the employees [sic] regular hourly rate, for actual hours attending class and tuition and/or registration fees and authorized travel expenses, when such certifications are used exclusively for providing emergency medical services within the Streetsboro Fire Deparment.
 "The employer shall compensate the employee for achieving and maintaining certifications in the following areas:
"1) Agility or Ability
"2) Emergency Medical Certification
"3) Firefighter Certifications
"4) Hazardous Materials Certifications
 "The employees [sic] regular hourly rate of pay will be established by adjusting the employees [sic] base Step rate for each area and level of certification achieved.
 "The Cities [sic] obligation for reimbursement of tuition cost, education cost, necessary travel related expenses and compensation at the employee's regular hourly rate of pay herein, shall be limited to educational sessions authorized by the Fire Chief and approved by the City Safety Director. All such training courses must be approved in advance by the Fire Chief or his designee."
 The facts underlying this appeal are undisputed. In February 1998, Chris Singleton, a part-time Streetsboro firefighter, sought and obtained permission from the then fire chief to attend emergency medical training paramedic (EMT-P) training. Payment for the course was approved by the chief and by the city safety director in accordance with city ordinances.
Upon completion of his training, Mr. Singleton requested reimbursement from the city of $3,379.31 for travel mileage and $6,679.20 in wages for the time he spent in the training classes. The request was denied. On February 14, 1999, Mr. Singleton filed a grievance with his immediate supervisor for reimbursement. The supervisor recommended that reimbursement be made and forwarded the grievance to his captain, who also recommended it be paid. The grievance was forwarded to the acting fire chief who, on the advice of the city law director, denied payment. The city safety director also denied the grievance.
Pursuant to the collective bargaining agreement, the dispute was submitted for arbitration. On October 5, 1999, a hearing was held before an arbitrator selected by the parties. No transcript of the hearing was made and the parties waived the filing of post-hearing briefs. On November 3, 1999, the arbitrator sustained the grievance and ordered appellee to reimburse Mr. Singleton for both travel expenses and wages for the time he spent in class, a total of $10,058.31.
The arbitrator ruled that the collective bargaining agreement provided for "a straight-forward declaration of the conditions under which the city will reimburse an employee for attending a training class." Those conditions, according to the arbitrator, were as follows: the training class addresses one of the several areas listed in Article XV; the training course must be approved in advance by the fire chief; and, the training must be authorized by the fire chief and the city safety director. According to him, Mr. Singleton was entitled to reimbursement because all of the conditions were met. With regard to a provision referring to the city's obligation to attaining and maintaining certifications, the arbitrator wrote: "Does the word `attain' have any significance? I think not. It appears that this word erroneously slipped into the paragraph."
On November 10, 1999, appellee filed an administrative appeal and motion to vacate the arbitration award in the Portage County Court of Common Pleas. The trial court upheld the arbitrator's ruling as it pertained to reimbursement for travel mileage, but vacated the award as it pertained to compensation for the time spent attending the EMT training. The trial court reasoned that the award for travel mileage expenses was authorized by Article XI of the agreement but reimbursement of wages for time spent attaining and maintaining non-required certifications was not authorized by Article XV of the agreement. It ruled that, although it was mindful that the goal in Ohio is to encourage arbitration and not interfere with arbitration rulings, it could not "support a decision of an arbitrator that seeks to change the agreement of the parties, reflected in a fully negotiated collective bargaining agreement." The trial court took issue with the fact that the arbitrator eliminated the word "attain" from Article XV, ignored another passage explaining that employee's wages would be increased for achieving and maintaining certain certifications, and interpreted the approval provision meant to limit the city's obligation to reimburse as creating a duty to reimburse. It did not, however, address whether it had jurisdiction to pass judgment on the arbitrator's ruling in light of Article VI, which expressly states that there shall be no appeal of an arbitrator's decision to a court of competent jurisdiction.
Appellant raises the following assignment of error:
 "The trial court erred as a matter of law when it granted in part and denied in part plaintiff-appellee's administrative appeal and motion to vacate pursuant to R.C. 2711.10."
 Appellant asserts that: R.C. 2711.10 and Ohio public policy favor the validity of arbitration awards; the trial court was required to confirm any arbitration award that even arguably construes a collective bargaining agreement; and, R.C. 2711.10(D) does not allow modification of arbitration awards.
Appellant first argues that appellee had no right to appeal the arbitration award to the trial court because of the language in Article VI(G) of the collective bargaining agreement; appellee does not respond to this contention, in its brief. The long-standing law in Ohio is that "[a] contract in advance to renounce and waive one's right to appeal to the courts for the redress of wrongs, is void, and of no effect." Myersv. Jenkins (1900), 63 Ohio St. 101, 57 N.E. 1089, paragraph seven of the syllabus. Thus, even though the collective bargaining agreement appears to be the product of a compromise between two sophisticated, well-represented parties, the agreement to eliminate the right to appeal to a court of competent jurisdiction is invalid and appellee had the right to contest the arbitrator's award in the court of common pleas.
Our reading of the collective bargaining agreement in the case at bar suggests that the arbitrator misinterpreted Article XV. Article XV provides that the city is only obligated to compensate a part-time employee his hourly wage for time spent attending required emergency medical continuing education classes. Neither side disputes that the classes attended by Mr. Singleton were not required of him. The arbitrator apparently interpreted language in Article XV that related to wage increases given to employees who had achieved and maintained certain certificates as meaning that the city would compensate employees for their wages while attending essential classes. He further read a section that stated that employees could only receive reimbursement for expenses and compensation for wages if the classes were for required emergency medical courses and pre-approved as meaning that they would receive compensation for any class that was pre-approved.
"R.C. 2711.10 limits judicial review of arbitration to claims of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his authority." Goodyear Tire Rubber Co. v. Local Union No.200 (1975), 42 Ohio St.2d 516, 330 N.E.2d 703, paragraph two of the syllabus. Appellees challenged the arbitration award under R.C.2711.10(D), which states that an award could be vacated if: "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."
In Goodyear, the Supreme Court of Ohio wrote that courts have almost uniformly refused to vacate awards because of errors of law or fact. With respect to the treatment of arbitration, it wrote that: "[w]ere the arbitrator's decision to be subject to reversal because a reviewing court disagreed with findings of fact or with an interpretation of the contract, arbitration would become only an added proceeding and expense prior to the final judicial determination." Id. at 520.
A trial court's power to inquire into whether an arbitrator exceeded his authority under R.C. 2711.10(D) is limited. Bd. of Education ofFindlay v. Findlay Education Ass'n (1990), 49 Ohio St.3d 129,551 N.E.2d 186, paragraph one of the syllabus. It has the power to determine only whether the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious. Id. at paragraph two of the syllabus. "An arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." Ohio Office of CollectiveBargaining v. Ohio Civil Services Employees Ass'n (1991),59 Ohio St.3d 177, 572 N.E.2d 71, syllabus.
This court has repeatedly held that parties are bound by the results of arbitration when the arbitrator's legal analysis is incorrect. Keys v.Hosler (June 20, 1997), Lake App. No. 96-L-150, unreported; HaciendaMexican Restaurant of Ohio v. Steve Zadd, dba DWL Flooring Systems, Ltd.
(Dec. 10, 1993), Lake App. No. 92-L-108, unreported, at 5; Ecker v.Hanusosky (Sept. 8, 1995), Lake App. No. 95-L-024, unreported. "[N]o arbitration decision would be truly `binding' if a party could challenge the arbitrator's alleged errors in determining the factual and legal issues before it." Lange v. Kent State Univ. (May 14, 1999), Trumbull App. No. 98-T-0076, unreported.
Furthermore, even though that specific portion of the agreement was void, the parties' agreement to eliminate the right to appeal the award shows a clear desire by both sides to abide by arbitration. This intent is further supported by the detailed method the parties set forth to select an arbitrator, presumably so they could agree on one both found to be fair and capable.
Because this dispute involves the legal analysis used by the arbitrator in interpreting the contract, rather than misconduct as spelled out in R.C. 2711.10, it was improper for the trial court to overturn the award. Appellant's assignment of error has merit.
We reverse and remand for the trial court to reinstate the arbitrator's ruling.
CHRISTLEY, P.J., concurs in judgment only, O'NEILL, J., concurs.