OPINION
{¶ 1} This is an appeal of a decision to grant a motion to vacate an arbitration award. The case arose out of the firing of a Monroe County Deputy Sheriff. Appellant argues that the Monroe County Court of Common Pleas abused its limited review powers, established by R.C. 2711.10, in vacating the arbitration award. Appellant's argument is correct. This matter is hereby reversed, the arbitration award is reinstated, and Appellant's Application to Confirm the Arbitration Award is granted.
 {¶ 2} This case stems from the firing of Deputy Craig Wheeler ("Wheeler"), a former full-time deputy of the Monroe County Sheriff's Department. Wheeler was initially a dispatcher with the sheriff's department and became a full-time deputy on March 2, 1997.
 {¶ 3} In June of 2000, the sheriff's department ordered an investigation of four deputies. The investigation arose out of allegations of illegal drug sales and other misconduct. During this investigation, one of Wheeler's former confidential informants reported that Wheeler had engaged in inappropriate sexual contact with her on four occasions. (11/2/01 J.E., 2). Based primarily on the informant's reports, Wheeler's employment with the sheriff's department was terminated on July 26, 2000. Wheeler filed a grievance alleging that his employment was terminated without just cause in violation of Appellant's collective bargaining agreement ("CBA"). The CBA provided for final and binding arbitration of disputes involving the interpretation and application of the CBA pursuant to R.C. 4117.10.
 {¶ 4} On December 15, 2000, an arbitration hearing was held before an arbitrator chosen in accordance with the CBA and the parties' procedures. Following hearing, on March 29, 2001, the arbitrator issued his decision (hereinafter "Award"). The Award ordered Appellee to modify the discipline imposed on Wheeler. Instead of termination, the arbitrator ordered Appellee to, "reinstate the grievant [Wheeler] with back pay less a suspension of twenty workdays and any interim earnings and unemployment insurance benefits." (3/29/01 Award, p. 21).
 {¶ 5} On June 8, 2001, Appellee filed a Petition for Vacation and/or Modification of Arbitration Award in the common pleas court. On July 2, 2001, Appellant filed an Answer and Counterclaim, along with an Application to Confirm the Arbitration Award.
 {¶ 6} On November 2, 2001, the court of common pleas issued an opinion granting Appellee's petition to vacate the Award. The court acknowledged its limited review authority over the arbitrator's decision. Nevertheless, the court held that the Award was not based on the essence of the parties' CBA and that it violated clear public policy standards. The court reinstated the Appellee's prior decision to terminate Wheeler's employment.
 {¶ 7} Appellant filed this timely appeal on November 29, 2001.
 {¶ 8} Appellant presents three interrelated assignments of error, all dealing with the authority of the common pleas court to overturn an arbitration award. The assignments of error will be treated together:
 {¶ 9} "I. THE COURT OF COMMON PLEAS ERRED TO THE PREJUDICE OF THE APPELLANT IN GRANTING THE MOTION TO VACATE FILED IN THIS CASE BY SUBSTITUTING ITS JUDGMENT FOR THAT OF THE ARBITRATOR.
 {¶ 10} "II. THE COURT OF COMMON PLEAS ERRED TO THE PREJUDICE OF THE APPELLANT BY EXCEEDING ITS AUTHORITY, IMPROPERLY ANAYLZING (SIC) THE MERITS OF THE ARBITRATION AWARD AND IMPOSING ITS OWN VIEW OF JUSTICE RATHER THAN CONFIRMING THE ARBITRATION AWARD.
 {¶ 11} "III. THE COURT OF COMMON PLEAS ERRED TO THE PREJUDICE OF THE APPELLANT IN CONCLUDING THAT THE AWARD OF THE ARBITRATOR VIOLATES PUBLIC POLICY."
 {¶ 12} Appellant argues that a court of common pleas may only overturn an arbitration award under the narrow circumstances provided by R.C. § 2711.10, which states in pertinent part:
 {¶ 13} "In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:
 {¶ 14} "(A) The award was procured by corruption, fraud, or undue means.
 {¶ 15} "(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.
 {¶ 16} "(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 {¶ 17} "(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."
 {¶ 18} Appellee agrees that R.C. 2711.10 governs the trial court's decision in this case. Although R.C. 2711.11 also presents separate grounds on which a court of common pleas may overturn an arbitration award, due to its unique nature under R.C. § 4117.10, those grounds are not at issue in this appeal.
 {¶ 19} Appellant is correct that once a motion to confirm an arbitration award has been filed, and once it is shown that none of the reasons for overturning the award listed in R.C. 2711.10 exist, the court of common pleas must confirm the award, citing Warren Edn. Assn. v.Warren City Bd. of Edn. (1985), 18 Ohio St.3d 170, 174, 18 OBR 225,480 N.E.2d 456.
 {¶ 20} Appellant is also correct that a court of common pleas cannot impose its own meaning on terms used in a collective bargaining agreement when the terms are undefined and when the arbitrator has been given discretion to interpret those terms. Miami Twp. Bd. of Trustees v.Fraternal Order of Police, Ohio Labor Council, Inc. (1998),81 Ohio St.3d 269, 272, 690 N.E.2d 1262.
 {¶ 21} A court of common pleas does not have the authority under R.C. 2711.10 to reverse an arbitrator's decision merely because the court disagrees with the arbitrator's findings of fact. Goodyear Tire Rubber Co. v. Local Union No. 200 (1975), 42 Ohio St.2d 516, 520, 71 O.O.2d 509, 330 N.E.2d 703.
 {¶ 22} The Ohio Supreme Court has stated that, "[i]t is the policy of the law to favor and encourage arbitration and every reasonable intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator's acts." Campbellv. Automatic Die Products Co. (1954), 162 Ohio St. 321, 329,123 N.E.2d 401.
 {¶ 23} An arbitrator may review and modify both the "just cause" finding used to support an employer's disciplinary action and the appropriateness of the type of discipline to be meted out, unless the employment agreement otherwise restricts such review. Miami Twp. Bd. ofTrustees, supra, 81 Ohio St.3d at 273, 690 N.E.2d 1262.
 {¶ 24} Judicial review of arbitration awards is narrow, and a high degree of deference must be afforded to the arbitrator's findings and interpretation of the contract. Goodyear Tire Rubber Co., supra,42 Ohio St.2d at 520, 330 N.E.2d 703; see also United PaperworkersInternatl. Union, AFL-CIO v. Misco, Inc. (1987), 484 U.S. 29,108 S.Ct. 364, 98 L.Ed.2d 286; United Steelworkers of Am. v. Enterprise Wheel Car Corp. (1960), 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.
 {¶ 25} Ohio's statutory scheme in R.C. 2711.10 limits judicial review of arbitration awards to claims of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his authority.Goodyear Tire and Rubber Co., supra, 42 Ohio St.2d at 520, 330 N.E.2d 703. Similarly, the United States Supreme Court has stated that:
 {¶ 26} "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." Enterprise Wheel and Car Corp., supra, 363 U.S. at 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424.
 {¶ 27} R.C. 2711.10(D), on which the common pleas court relied here, provides that a court may vacate an arbitration award if, "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." An arbitrator exceeds his or her power when the arbitrator's award fails to draw its essence from the collective bargaining agreement. Board ofEduc. of the Findlay City School Dist. v. Findlay Educ. Assn. (1990),49 Ohio St.3d 129, 551 N.E.2d 186, paragraph two of the syllabus.
 {¶ 28} An arbitrator's award draws its essence from a collective bargaining agreement, "when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." Mahoning Cty. Bd. of Mental Retardation Developmental Disabilities v. Mahoning Cty. TMR Edn. Assoc. (1986),22 Ohio St.3d 80, 22 OBR 95, 488 N.E.2d 872, paragraph one of the syllabus. "An arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." OhioOffice of Collective Bargaining v. Civ. Serv. Employees Assn., Local 11,AFSCME, AFL-CIO (1991), 59 Ohio St.3d 177, 572 N.E.2d 71, syllabus.
 {¶ 29} An arbitrator also exceeds his or her power by issuing an award that is contrary to public policy, and courts will not enforce such awards. Southwest Ohio Regional Transit Auth. v. Amalgamated TransitUnion, Local 627 (2001), 91 Ohio St.3d 108, 112, 742 N.E.2d 630, citingW.R. Grace Co. v. Local 759, Internatl. Union of the UnitedRubber, Cork, Linoleum Plastic Workers of Am. (1983), 461 U.S. 757,103 S.Ct. 2177, 76 L.Ed.2d 298. If public policy is used to overturn an arbitrator's award, that public policy, "must be well defined and dominant, and is to be ascertained `by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" W.R. Grace, supra, at 766, 103 S.Ct. 2177, 76 L.Ed.2d 298, quoting Muschany v. United States (1945), 324 U.S. 49, 66, 65 S.Ct. 442,89 L.Ed. 744; accord, Southwest Ohio Regional Transit Auth.,91 Ohio St.3d 108, 112, 742 N.E.2d 630. For example, the dictates of Ohio's criminal statutes constitute public policy decisions made by the legislature, and may be used in some instances as a guide to Ohio's public policy in civil litigation. Collins v. Rizkana (1995),73 Ohio St.3d 65, 70-71, 652 N.E.2d 653.
 {¶ 30} In order for Appellant to succeed in this appeal, it must be shown that both reasons relied upon by the common pleas court to vacate the Award were faulty. In other words, Appellant must show that the arbitrator: 1) did not depart from the essence of the contract; and 2) did not violate public policy in fashioning a remedy.
 {¶ 31} The Award in the instant case does not depart from the essence of the CBA. The following CBA provisions are relevant to this issue:
 {¶ 32} "Section 3.1 The Labor Council recognizes the right and authority of the Employer to administer the business of the department, and in addition to other functions and responsibilities which are required by law, the Labor Council recognizes that the Employer has and will retain the full right and responsibility to direct the operations of the department, to promulgate rules and regulations, and to otherwise exercise the prerogatives of management, which more particularly include but are not limited to the following which are not modified by the express terms of this agreement:
 {¶ 33} "A. To manage and direct its employees, including the right to select, hire, promote, transfer, assign, evaluate, layoff and recall, or to reprimand, suspend, discharge, or discipline for just cause or to maintain order among employees.
 {¶ 34} "* * *
 {¶ 35} "Section 10.3(C) The arbitrator shall hold the arbitration promptly and issue his decision within a reasonable time thereafter. The arbitrator shall limit his decision strictly to the interpretation, application, or enforcement of those specific articles and/or sections of this agreement in question.
 {¶ 36} "The arbitrator shall not have the authority to add to, subtract from, modify, change, or alter any provision of this agreement, nor add to, subtract from, or modify, the language therein in arriving at his determination on any issue presented that is proper within the limitations expressed herein. (The arbitrator shall expressly confine himself to the precise issues submitted for arbitration and shall have no authority to determine any other issues not so submitted to him, or to submit observation or declarations of opinion which are not directly essential in reaching a decision on the issue in question.)
 {¶ 37} "* * *
 {¶ 38} "Section 15.1. The Employer may take disciplinary action against any employee in the bargaining unit for just cause. The Employer may take disciplinary action for actions which occur while an employee is on duty, or which occur while an employee is working under the colors of the Employer, or in instances where an employee's conduct violates his oath of office.
 {¶ 39} "Section 15.2. Except in instances where the employee is found guilty of serious misconduct, discipline will be applied in a corrective, progressive, and uniform manner.
 {¶ 40} "* * *
 {¶ 41} "Section 15.7. Whenever the Employer determines that an employee may be disciplined for cause that could result in suspension, reduction, or termination, a disciplinary hearing will be scheduled to give the employee an opportunity to offer an explanation of the alleged misconduct. However, no prior hearing is required in cases where the employee is charged with one of the following: insubordination; illegal possession of unauthorized firearms; dishonesty; fighting; drunkenness; or being under the influence of alcohol or illegal drugs which may be verified by a sobriety test or medical examination. Should an employee be involved in a situation where it is determined that no prior hearing is required, the employee shall be suspended with pay for those hours he is scheduled to work, and a hearing will be held within forty-eight (48) hours to determine if discipline is necessary.
 {¶ 42} "Any employee who is disciplined by suspension or discharge after the predisciplinary conference will be given a written statement describing the reason or reasons for which he has been suspended or discharged. In the case of suspension, he will be advised of the duration of the suspension."
 {¶ 43} This appeal revolves around the meaning of the line: "[t]he Employer may take disciplinary action against any employee in the bargaining unit for just cause." (Contract, Section 15.1). The CBA does not further define what constitutes "just cause." The CBA does not define what type of "just cause" warrants termination of employment. It appears from the CBA that the meaning of "just cause" and the fashioning of a remedy in response to a finding of "just cause" are left to the discretion of the arbitrator.
 {¶ 44} The arbitrator determined that Wheeler had engaged in consensual sexual conduct with a confidential informant while in uniform and while on duty. (Award, p. 19). The arbitrator concluded that Wheeler's actions constituted conduct unbecoming an officer. (Award, p. 19). The arbitrator reasoned that if Wheeler had engaged in "unwanted physical contact" with the informant, or if Wheeler had "preyed upon" her, dismissal would have been warranted. (Award, p. 19). The arbitrator found that the informant actually sought contact with Wheeler, and that Wheeler's advances were not unwelcome. (Award, p. 20). The arbitrator concluded that there were grounds for discipline, but that this did not rise to the level of serious misconduct necessary for immediate termination of employment. While the common pleas court, and indeed this Court, may disagree with the arbitrator, based on R.C. 2711.10(D), the facts as presented, and considering the broad powers granted to the arbitrator in determining disciplinary matters pursuant to the CBA, the common pleas court erred in vacating the Award. The arbitrator's decision cannot be construed as irrational, arbitrary or capricious in light of the discretionary language of the CBA and the specific findings made by the arbitrator. Because the law presumptively favors arbitration, we may not vacate otherwise valid awards simply because we disagree with the logic and findings of the arbitrator. In order to vacate an arbitrator's decision, there can be no logical nexus between the decision and the language of the CBA. It is not enough to simply disagree with the arbitrator's determination. The determination must be invalidated by the very terms of the CBA. The record reflects that the arbitrator was granted the power to modify the discipline as he saw fit and chose to do so, here.
 {¶ 45} Appellee argues that the arbitrator somehow grafted a new requirement into the contract that Wheeler could be fired only if it were proven that he had been a sexual predator. The record does not support Appellee's assertion. The arbitrator only discussed the sexual predator concept in response to suggestions made by Appellee. (Award, p. 21). The arbitrator concluded that, if it had been proven that Wheeler "preyed upon" the informant, he would have found that grounds for termination of employment existed. (Award, p. 19). Nowhere does the Award state or imply that sexual predator status constituted the only grounds for termination of employment. The arbitrator uses this discussion to illustrate his reasoning for making the determination to modify the discipline for this infraction to something less than termination.
 {¶ 46} The Award also does not contravene any clearly defined public policy. The common pleas court concluded that, "the solicitation of sex, fondling, and general immoral behavior while in uniform and on duty violates clearly defined public policies that are both written and unwritten." (11/2/01 J.E., p. 5). Assuming arguendo that Wheeler's actions do constitute "solicitation of sex," that label, by itself, does not define a criminal act. Criminal solicitation involves additional factors, such as solicitation of sexual activity for hire, or soliciting a minor. See R.C. 2907.02, 2907.24. Therefore, even assuming that criminal solicitation would require Wheeler's dismissal under a public policy theory, the arbitrator's findings do not lead to a conclusion that criminal solicitation took place.
 {¶ 47} Appellee argues that, under Ohio's bribery and ethics laws, public employees are prohibited from using their public office to secure anything of value. See R.C. 2921.02 and 102.03(E). Appellee citesState v. Knight (2000), 140 Ohio App.3d 797, 749 N.E.2d 761, in which a police officer threatened to arrest a woman, and then forced her to have sexual intercourse with him in exchange for merely giving her a traffic citation rather than arresting her. The officer was convicted of accepting a bribe, based on the court's conclusion that the defendant had accepted sexual favors, which were treated as a commodity having value.
 {¶ 48} While Appellee is correct as to the statement of the law found in Knight, as Knight is a criminal case and not an arbitration or contract case, it sheds little light on the issues at hand. Furthermore, there is no evidence that the sexual encounters in the case sub judice were "sexual favors" or had anything to do with the informant attempting to exert influence over Wheeler's duties and powers as a police officer, which one would expect in a bribery case. While the nature of their relationship may lend itself to such an inference, the record does not indicate that the informant specifically needed Wheeler's help or influence in any way. As stated previously, the arbitrator found that Wheeler initiated inappropriate sexual contact with a confidential informant, and that the contact was encouraged by the informant. These findings certainly do not require the conclusion that Wheeler committed bribery.
 {¶ 49} Neither Appellee nor the trial court point to any statute or caselaw which specifically criminalizes the kind of consensual sexual activity engaged in by Wheeler. Neither Appellee nor the trial court specify any statute or caselaw which mandates that a police officer be fired for such activity. Obviously, Wheeler's actions may be interpreted as an abuse of power and as conduct unbecoming of an officer. Nevertheless, not all instances of abuse of power or conduct unbecoming an officer warrant the automatic termination of employment. Despite the fact that the common pleas court, and perhaps this Court as well, would have decided the matter differently when presented with these facts, the public policy concerns asserted by Appellee have not been clearly defined, are not supported by statutes or other legal precedents, and generally do not satisfy the requirements of W.R. Grace and SouthwestOhio Regional Transit Auth., supra. Therefore, Appellee's stated public policy concerns, while certainly understandable, nevertheless cannot be used to justify the court's decision to vacate the Award.
 {¶ 50} Based on the language of the CBA giving broad discretionary powers to the arbitrator to review and modify disciplinary determinations of the appointing authority, and based on the tight strictures of R.C.2711.10(D), the record does not reflect that the arbitrator exceeded his powers or issued an award which contravenes a clear public policy. We must sustain all three of Appellant's assignments of error.
 {¶ 51} For all the foregoing reasons, the judgment of the court of common pleas vacating the Award is reversed, the Award is reinstated and Appellant's Application to Confirm the Arbitration Award is granted.
Donofrio, J., concurs.
DeGenaro, J., concurs.