516

The Goodyear Tire & Rubber Co., Appellant, *v.* Local Union No. 200, United Rubber, Cork, Linoleum and Plastic Workers of America, Appellee.

[Cite as Goodyear v. Local Union No. 200 (1975), 42 Ohio St. 2d 516.]

(No. 74-641—Decided June 25, 1975.)

518

*Messrs. Thompson, Hine & Flory, Mr. Richard V. Whelan, Jr., Mr. Joseph S. Ruggie, Jr., Mr. T. Merritt Bumpass, Jr.,* and *Mr. Arthur L. Sutton,* for appellant.

*Mr. Harley M. Kastner* and *Mr. Charles Armstrong,* for appellee.

STERN, J. The essential claim made by the Company is that the arbitrator exceeded his powers. Specifically, the Company claims that the arbitrator made a manifest error of law by determining that the EEOC Guideline was a federal regulation, and that this error exceeded his powers.

R. C. 2711.10 provides:

"In any of the following cases, the Court of Common Pleas shall make an order vacating the award upon the application of any party to the arbitration if:

"(A) The award was procured by corruption, fraud, or undue means.

"(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.

"(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may direct a rehearing by the arbitrators."

The Pension Agreement, Part V, Section F-6, states that "* * * the impartial umpire shall have the authority only to decide the question pursuant to the provisions of

this Part V applicable to the question, but he shall have no authority in any way to alter, add to, or subtract from any such provisions. The decision of the umpire shall be binding on the employer, such employee, and all other interested parties. * * * ''

The provision of the Pension Agreement subject to dispute was Part V, Section C-1(a), which applied to maternity disabilities. Section C-8 provides that ''[t]he provisions of this Section C may be appropriately modified where necessitated by federal or state statute or regulation.'' The arbitrator held that it was within his power to apply the modification clause in Section C-8, as an express exception to the general prohibition against altering the provisions of the contract.[2]

No claim is raised that the arbitrator's determination that he had jurisdiction to alter the agreement as necessitated by statute or regulation exceeded his authority. An arbitrator's authority is limited to that granted him by the contracting parties, and does not extend to the determination of the wisdom or legality of the bargain. ''* * * [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course

---

[2]Part V, Section C of the Pension Agreement, provides:
"1. Accident and Sickness Benefits for Employees
    "(a) General.
    "Benefits will be paid because of a disabling accident or sickness while under the care of a doctor licensed to practice medicine.
    "Benefits will be payable from the first day of disability due to accident or occupational illness; the eighth day of disability due to non-occupational sickness, or the first day of hospital confinement if occurring prior to the eighth day. Benefits will be paid for the duration of the disability not to exceed 52 weeks for each period of disability.
    "Benefits will be limited to six weeks for all disabilities due to any one pregnancy. Benefits for disability due to pregnancy will be available only if the pregnancy commences after the employee becomes covered under this plan.
    "* * *
"8. Modification
    "The provisions of this Section C may be appropriately modified where necessitated by federal or state statute or regulation."

look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.* (1960), 363 U. S. 593, 597. In the instant case, the Pension Agreement does specifically provide for modification as necessitated by statute or regulation. No abuse of authority appears from the arbitrator's decision that he could consider the modification clause to be subject to his jurisdiction and interpretation.

Arbitration of the modification clause, as of other contract clauses, can be effective only to the extent that the arbitrator's decision is conclusive on the parties, where the arbitration is properly and fairly conducted. Were the arbitrator's decision to be subject to reversal because a reviewing court disagreed with findings of fact or with an interpretation of the contract, arbitration would become only an added proceeding and expense prior to final judicial determination. This would defeat the bargain made by the parties and would defeat as well the strong public policy favoring private settlement of grievance disputes arising from collective bargaining agreements.

Ohio's statutory scheme in R. C. 2711.10 thus limits judicial review of arbitration to claims of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his authority. Similarly, the United States Supreme Court has stated that:

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers of America* v. *Enterprise Corp., supra,* at 596.

The Company argues, however, that the arbitrator made a manifest error of law and thereby exceeded his authority. The arbitrator stated in his decision that:

"The Guidelines have become part of the Code of Federal Regulations, and in the umpire's judgment the

provision in question (1604.10) constitutes a federal regulation within the meaning of Section C-8, Part V, of the Pension, Insurance and Service Award Agreement. This section specifies that the provisions of Section C may be appropriately modified where necessitated by federal regulation.''

The Company contends, and the Union concedes, that the EEOC Guideline cited is not a federal regulation with the force of law. The Guideline is an administrative determination of the meaning of Title VII, promulgated by the agency charged with the enforcement of Title VII. While not legally binding *per se,* the United States Supreme Court has stated that EEOC Guidelines are ''entitled to great deference.'' *Griggs* v. *Duke Power Co.* (1971), 401 U. S. 424, 434. The guideline in question has also been applied by the EEOC, in *Andreev* v. *National Broadcasting Co.* (1973), CCH, EEOC Decisions, Paragraph 6380, and upheld by the federal courts, *Wetzel* v. *Liberty Mutual Insurance Co.* (C. A. 3, 1975), 511 F. 2d 199 (cert. allowed, May 27, 1975); *Hutchison* v. *Lake Oswego School District* (D. Ore. 1974), 374 F. Supp. 1056; Cf. *Communications Workers of America* v. *A. T. & T. Co.* (C. A. 2, 1975),   F. 2d   . It has been held that this Guideline ''is in accord with the will of Congress as expressed in the Act and its legislative history.'' *Gilbert* v. *General Electric Company* (E. D. Va. 1974), 375 F. Supp. 367, 381.

The arbitrator's decision belies the argument that the arbitrator mistakenly believed the Guideline to be binding. The decision does not state that the Guideline is, as a matter of law, a federal regulation. It states rather that the Guideline is ''a federal regulation within the meaning of [the Pension Agreement].'' This language is ambiguous. It could mean either that the arbitrator believed the Guideline to be binding, or that he interpreted the term ''regulation,'' as used in the contract, to include an administrative Guideline such as this one, which was published in the Code of Federal Regulations and was an administrative interpretation of a federal statute. Later in his decision, the arbitrator states that the Guideline '' * * * is an

522

interpretation of Title VII of the Civil Rights Act, and may properly be presumed to be valid until declared otherwise by the federal courts. A conflict with the provisions of the [Master] Agreement might be found by the EEOC pursuant to a complaint filed with that agency. It also might be found by an umpire, if circumstances were clear enough in a particular case before him." This language strongly suggests that the arbitrator in fact did not mistake the Guideline for a regulation with the force of law. Although the arbitrator's decision may not be wholly free of ambiguity, " * * * [a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *United Steelworkers of America* v. *Enterprise Corp., supra,* at 598[3].

At common law, the courts have almost uniformly refused to vacate an arbitrator's award because of an error of law or fact. It has been held that the arbitrator is the final judge of both law and facts, and that an award will not be set aside except upon a clear showing of fraud, misconduct or some other irregularity rendering the award unjust, inequitable, or unconscionable. (*Allstate Ins. Co.* v. *Fioravanti* [1973], 451 Pa. 108, 299 A. 2d 585), and that even a grossly erroneous decision is binding in the absence of fraud. *Trustees of Boston & Maine Corp.* v. *Massachusetts Bay Transportation Authority* (Mass. 1973), 294

---

[3]An arbitrator's decision rejecting a Title VII claim has been held not to foreclose an employee's raising the same claim in a *de novo* hearing in federal court. *Alexander* v. *Gardner-Denver* (1974), 415 U. S. 36. In that decision, the court cited the ways in which arbitration was "a comparatively inappropriate forum for the final resolution of rights created by Title VII." *Supra,* at 56. It is clear, however, that the court intended to permit the courts to grant a statutory remedy as an alternative, not a substitute, to any contractual remedy granted by arbitration. The court stated that "* * * the arbitrator has authority to resolve only questions of contractual rights, and this authority remains regardless of whether certain contractual rights are similar to, or duplicative of, the substantive rights secured by Title VIII." *Supra,* at 53-54.

N. E. 2d 340. See, also, *Grudem Brothers Co.* v. *Great Western Piping Corp.* (1973), 297 Minn. 313, 213 N. W. 2d 920; *Associated Teachers of Huntington* v. *Board of Education* (1973), 33 N. Y. 2d 229, 306 N. E. 2d 791; *Bell Aerospace Co.* v. *Local 516 Inter. Union, UAW* (W. D. N. Y. 1973), 356 F. Supp. 354.

In other cases, courts have vacated an arbitrator's decision, where the central fact underlying an arbitrator's decision is concededly erroneous (*Electronics Corporation of America* v. *I. U. E., Local 272* [C. A. 1, 1974], 492 F. 2d 1255), or suggested that " * * * if the reasoning [of an arbitrator] is so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling, then the court can strike down the award * * *." *Safeway Stores* v. *American Bakery & Confectionary Workers, Local 111* (C. A. 5, 1968), 390 F. 2d 79, 82. In the instant case, we need not consider whether such gross errors might be said to exceed the arbitrator's powers, within the meaning of R. C. 2711.10. It is far from clear in the instant case that the arbitrator made any error at all, or that his decision would have in any way differed absent the claimed error.

The parties to the Pension Agreement specifically agreed that it could be modified as necessitated by statute or regulation. The arbitrator's decision shows that this is what he did. How this or another court might have decided the issue presented to the arbtirator is irrelevant; that decision, by voluntary contract, was left to arbitration and no abuse of authority appears which would justify the courts in reversing that decision. "The arbiter was chosen to be the Judge. That Judge has spoken. There it ends." *Safeway Stores* v. *American Bakery & Confectionary Workers, supra*, at 84.

*Judgment affirmed.*

O'NEILL, C. J.; HERBERT, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

CORRIGAN, J., dissents.