OPINION
Plaintiff-appellant, DH-KL Corporation ("DH-KL"), appeals from a judgment of the Franklin County Court of Common Pleas finding that defendants-appellees, Stampp Corbin and Stampp Corbin Corporation ("SCC"), fully performed the obligations imposed upon them pursuant to an arbitration award that ordered, among other things, the dissolution of the parties' partnership, Resource Computer Systems One (RCSO"). Defendants, in response, have asserted that the appeal is frivolous, and pursuant to App. R. 23, have requested attorney fees and costs incurred in the appeal.
David Harding is a director, officer and shareholder of DH-KL, a forty-nine percent partner in RCSO. Corbin is the president, owner and sole shareholder of SCC, a fifty-one percent partner in RCSO. RCSO was a partnership established in 1991 between DH-KL and Vaughn Sizemore to sell computer systems. In 1992, SCC bought Sizemore's fifty-one percent interest in RCSO so that RCSO could qualify as a minority business enterprise in the state of California and do business with ATT in California. Disagreements between Corbin and Harding over management questions began almost immediately and culminated in a hearing before a panel of arbitrators in August 1994.
As a result of that hearing, the arbitrators issued an award on October 4, 1994, that ordered RCSO be dissolved and a limited accounting of the partnership be prepared to determine if (1) any amounts were due from SCC to RCSO, (2) any amounts were due from RCSO to its partners by way of distributions, and (3) any amounts in excess of $90,000 a year had been paid to Corbin in the form of salary or bonus, as any excess was to be deemed an amount Corbin owed to RCSO. After those amounts were paid, the remaining assets were to be distributed in kind in proportion to each partner's interest in RCSO.
The accounting determined that $163,496 was due from SCC to RCSO and that another $82,088 was due from Corbin to RCSO, for a total of $245,584 due from defendants to RCSO. The accounting also found that no amounts were due from RCSO to its partners, and that as of October 31, 1994, RCSO was in a negative capital position and was unable to meet its current obligations. It recommended that all cash should be reserved to meet those current obligations.
DH-KL, in its first amended complaint, sought confirmation of the arbitration award pursuant to R.C. 2711.09 and 2711.12. In their answer to that complaint, defendants also sought confirmation of the arbitrators' award. The trial court confirmed the award in a judgment entry dated March 2, 1998. Count three of DH-KL's amended complaint alleged that defendants failed to pay the amounts the accounting determined to be due to RCSO and failed to comply with a covenant not to compete in the employment agreement.
At the hearing on the third count of DH-KL's amended complaint, defendants introduced evidence to show that Corbin made the payments required under the award through his new corporation, Resource One Computer Systems, Inc. ("ROCS"), of which he is the sole owner. ROCS was formed around the time of RCSO's dissolution, is involved in the same line of business as RCSO, and is a minority business enterprise doing business with ATT.
At the time of the arbitration award, RCSO owed $445,000 to ATT in trade debt for product purchased from ATT. After the dissolution ordered by the arbitration award, the debt ultimately became evidenced by two separate but related instruments: a promissory note and a guarantee. Corbin signed a promissory note in favor of ATT for $226,804.52, the amount that Corbin felt was his fifty-one percent share of the trade debt RCSO owed to ATT. While Corbin, through ROCS, guaranteed the remaining forty-nine percent of the trade debt, Corbin felt it was DH-KL's responsibility. If, however, DH-KL failed to make payments, ROCS was obligated to do so under the guarantee.
In addition to the trade debt, RCSO had a disputed debt of $720,000 arising out of agency fees RCSO owed to ATT. Prior to the dissolution of RCSO, Corbin settled the disputed debt for $200,000 in full satisfaction of the debt. In combination, the trade debt and the settlement totaled over $645,000 that RCSO owed to ATT.
The promissory note was paid with checks written by RCSO after the dissolution, and the debt was discharged. When DH-KL did not make payments on its forty-nine percent of the debt, ROCS directly paid $209,058 of the guarantee to ATT, while checks from RCSO, premised on funds from ROCS, were issued to pay off the remainder. The guarantee thus was paid in full and discharged. Similarly, the $200,000 compromised debt was paid in full with checks from RCSO.
Altogether, ROCS paid over $209,000 directly to ATT, and RCSO apparently paid over $400,000, but in any event more than $245,000 to ATT, all in satisfaction of RCSO's debts. Corbin testified that the payments from RCSO originated with checks from ROCS that, once received, he then used to make payments from RCSO to ATT.
After the hearing, the trial court found the payments that defendants made fully satisfied the obligations of the award, and because RCSO had a negative equity at the time of dissolution, no net assets were available for a distribution to the partners. DH-KL timely appeals, assigning the following errors:
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DISREGARDED EXPRESS PROVISIONS IN A CONFIRMED ARBITRATION AWARD, THEREBY MATERIALLY ALTERING THE SUBSTANTIVE MERITS AND THE INTENT OF THE AWARD.
 II. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT MADE LEGAL AND FACTUAL DECISIONS WHICH WERE INCONSISTENT WITH A CONFIRMED ARBITRATION AWARD AND THE EVIDENCE PRESENTED AT TRIAL.
DH-KL contends in both assignments of error that because the money at issue was paid to ATT, defendants did not meet their obligations under the award. More specifically, DH-KL's first assignment of error asserts the trial court erred in allowing defendants to make payments to creditors when the express language of the award provides only for payments to the partnership and a distribution in kind of the remaining assets of the partnership, with no mention of the creditors of the partnership.
DH-KL's appeal does not involve a review of the trial court's decision to confirm the arbitrators' award, where the court generally would have no discretion to deny a request to confirm an award. Woods v. Farmers Ins. of Columbus, Inc. (1995),106 Ohio App.3d 389, 392; R.C. 2711.09. Neither are we reviewing an order vacating nor modifying an arbitration award, where our review would be limited to claims of fraud, corruption, misconduct, an imperfect award, or an arbitrator exceeding his or her authority. Goodyear Tire Rubber Co. v. Local Union No. 200
(1975), 42 Ohio St.2d 516, paragraph two of the syllabus; R.C.2711.10; R.C. 2711.11. Rather, we are reviewing a judgment of the trial court that found defendants had fully performed their obligations under the award.
DH-KL's contention that defendants did not perform their obligations under the award asserts, in effect, that defendants breached the award. In such a case, judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279. However, the construction of written contracts and instruments generally is a matter of law. Long Beach Ass'n, Inc. v. Jones (1998), 82 Ohio St.3d 574,576; cf., Graham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311,313. Questions of law are reviewed de novo. Ohio BellTel. Co. v. Pub. Util. Comm. (1992), 64 Ohio St.3d 145, 147;Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107,108. Therefore, we review de novo the trial court's interpretation of the arbitration award like any other written instrument.
DH-KL argues that, contrary to the specific language of the arbitration award, the trial court erred in finding defendants satisfied the award (1) by payments to RCSO, which then paid the same money to ATT, and (2) other payments Corbin made through ROCS directly to ATT. The trial court interpreted the arbitration award in light of R.C. 1775.39, which specifies that creditors of a partnership are to be paid before partners receive any distributions from a dissolved partnership. DH-KL, however, insists that because the arbitration award contains no language allowing payments to creditors before partners receive distributions, any payments to creditors are not in compliance with the award.
The first paragraph of the award ordered RCSO dissolved. R.C. 1775.28 defines "dissolution" as "the change in the relation of the partners caused by any partner's ceasing to be associated in the carrying on as distinguished from the winding up of the business." On dissolution, the partnership is not terminated; rather it continues until the winding up of the partnership is completed. R.C. 1775.29. A dissolution that is not in contravention of the partnership agreement causes a winding up of the partnership unless the partner or partners who did not contravene the partnership agreement consent to continue the partnership. R.C. 1775.36.
RCSO was dissolved as of October 15, 1994, and after that date continued to exist only for purposes of winding up. R.C.1775.32. Winding up is the process of settling accounts and liquidating the assets of a partnership for the purposes of making distribution of net assets to partners. Corna v. Binsky (Sept. 12, 1996), Franklin App. No. 96APE03-311, unreported (1996 Opinions 3570). The winding up of partnership affairs involves applying partnership property to obligations of the partnership, first toward outside creditors and then toward partners. In re Doddy
(Bkrtcy. S.D. Ohio 1994), 164 B.R. 276, 278.
R.C. 1775.39 governs the winding up of a partnership, and provides in pertinent part, that:
 In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary:
(A) The assets of the partnership are:
(1) The partnership property;
 (2) The contributions of the partners necessary for the payment of all the liabilities specified in division (B) of this section.
 (B) The liabilities of the partnership shall rank in order of payment, as follows:
(1) Those owing to creditors other than partners;
 (2) Those owing to partners other than for capital and profits;
(3) Those owing to partners in respect of capital;
(4) Those owing to partners in respect of profits.
Pursuant to the above statute, and subject to any agreement between the parties, creditors of a partnership are to be paid before partners receive any distributions from the partnership.
The parties had no agreement that would relieve the operation of the statute. See Deist v. Timmins (1986), 32 Ohio App.3d 74, paragraph two of the syllabus. Nor does the arbitration award constitute an agreement among the parties. Rather, the court's judgment entry entered the award as thejudgment of the court. Moreover, the arbitration clause in the partnership agreement is merely an agreement to arbitrate claims, not an agreement concerning the payment of creditor's claims upon dissolution. Rather than an attempt to relieve the partners from the operation of the statute, the portion of RCSO's partnership agreement dealing with liquidation upon dissolution specifically provides that creditors shall be paid before partners receive anything, in accord with the provisions of the laws of this state.
Nonetheless, because the arbitration award did not provide for payments to RCSO's creditors, DH-KL contends that, absent a provision for the payment of creditors before the partners are to receive any money, the payments defendants made do not satisfy the award. DH-KL seeks further support in the legal principle that when parties agree to submit their dispute to binding arbitration, they agree to accept the result regardless of its legal or factual accuracy. Goodyear Tire Rubber Co., supra; Nester v. Nester (May 23, 1995), Franklin App. No. 94APE09-1359, unreported (1995 Opinions 2154); Huffman v.Valletto (1984), 15 Ohio App.3d 61, 63, (noting that if the parties could challenge an arbitration decision on "the ground that the arbitrators erroneously decided legal or factual issues, no arbitration would be binding"). DH-KL thus stresses that the award must be followed regardless of its legal accuracy.
Contrary to DH-KL's argument, the arbitrators' failure to provide for payments to creditors upon the dissolution of RCSO is not an erroneously decided legal issue. Rather, the arbitrators' award simply made no provision for creditors to be paid. To interpret the absence of any language providing for the payments of creditors as requiring the partners to dissolve the partnership without paying its creditors would not only place the partnership's creditors at a disadvantage, but cause the award to directly contradict the partnership agreement and Ohio law. R.C.1775.39 places creditors in a priority position over partners to receive payments from a partnership that is winding up, a process that the award at least implicitly ordered when it directed the partnership be dissolved.
Dissolution terminates all authority of a partner except as necessary to wind up the affairs of the partnership or to complete unfinished transactions. R.C. 1775.32. Thus, even after dissolution, Corbin, as managing partner of RCSO, could still take actions on RCSO's behalf to wind up the partnership, including payment of creditors. According to the evidence, ROCS issued checks payable to ATT totaling more than $209,000 to satisfy Corbin's guarantee of forty-nine percent of RCSO's trade debt to ATT. In addition RCSO wrote checks totaling more than $455,000 to ATT, all funded with money ROCS had paid to RCSO.
While Corbin unquestionably had ulterior motives in seeing that ATT was paid, the accounting recommended that RCSO utilize all its cash to meet current obligations, and R.C. 1775.39
requires a partnership to use partnership property to pay off its creditors before anyone else. Even if the ROCS payments directly to ATT did not satisfy the arbitration award directing defendants to pay approximately $245,000 to RCSO, Corbin complied with both the award and R.C. 1775.39 in paying money to RCSO to satisfy the arbitration award, and then, acting as RCSO's managing partner, in paying that same money on behalf of RSCO to RCSO's biggest creditor, ATT. Pursuant to the accounting ordered by the arbitrators and the powers granted by R.C. 1775.32, Corbin's payments were proper.
In the final analysis, the trial court's decision does not address the merits of the arbitrators' award; it simply applied Ohio law regarding the dissolution of a partnership. While the award ordered an accounting to determine amounts due to the partners and the partnership, the award only dealt with those payments because it resolved a dispute between the partners. It did not purport to address RCSO's creditors, and thus does not contradict or seek to change the priorities set forth in R.C.1775.39.
Defendants owed RCSO over $245,000. Defendants paid more than that amount to RCSO who, under the direction of its managing partner, then paid that money to ATT in satisfaction of a RCSO debt. Defendants complied with the arbitrators' award when those monies were paid to RCSO. That the money was subsequently used to pay a debt of the partnership does not change the fact that defendants paid the money to RCSO and thereby satisfied the award.
DH-KL's first assignment of error is overruled.
DH-KL's second assignment of error asserts the trial court erred in finding no assets were available for distribution pursuant to paragraph six of the arbitration award. DH-KL points to testimony and exhibits presented at trial that show over $3.4 million worth of assets available for distribution as of the date of dissolution.
Paragraph six of the arbitration award states:
 Any amounts determined by the auditor to be due by the partnership to its partners shall be paid from partnership funds no later than December 31, 1994; and thereafter the remaining assets of the partnership, as of the closing date, shall be distributed to each partner, in kind, in proportion to each such partner's interest in the partnership, such distribution to be completed no later than December 31, 1994; provided, however, that if the auditor determines that such distribution in kind is not practicable, then all of the assets of the partnership shall be liquidated by means of public sale, or by such other means as the partners may agree upon, and the net proceeds distributed to the partners no later than January 30, 1995. (Emphasis added.)
The accounting did not determine the practicality of a distribution in kind and no such distribution has ever occurred. The trial court, however, found that because RCSO's liabilities exceeded its assets, no net assets were available for distribution.
Initially, the accounting found no amounts due from the partnership to either of the partners under the first clause of paragraph six of the award. Moreover, the trial court determined RCSO was in a negative equity position at dissolution and thus had no net assets available for a distribution in kind. The evidence supports the trial court's finding, as DH-KL's balance sheets as of October 31, 1994, show assets of $3,425,285 compared to liabilities of $3,787,171, a deficit of more than $360,000. The trial court did not err in finding no net assets available for distribution.
Given the requirement of R.C. 1775.39 requiring that creditors be paid before partners receive any assets, the trial court also did not err in requiring only net assets to be distributed in kind. See Klaene v. Minnick (Dec. 29, 1997), Warren App. No. CA97-03-032, unreported (noting that the trial court "ensured that the claims of third-party creditors would be given priority over [partner's] claims by subtracting these liabilities from the total assets before making any distributions of partnership property from the remaining * * * net partnership assets"). Here, since the partnership had insufficient assets to pay creditors, no net assets were available and the trial court did not err in finding that no distribution in kind was required.
DH-KL's second assignment of error is overruled.
Pursuant to paragraph five of the arbitration award, on Corbin's or SCC's payments of all amounts owed to RCSO, Corbin was to be released from any obligations imposed upon him by an employment agreement the parties entered into on July 2, 1992, including a covenant not to compete. Because Corbin complied with the award, the trial court released him from any obligations under the employment agreement. The trial court did not err in finding that Corbin had satisfied the arbitrators' award and in releasing Corbin from any restrictions the employment agreement imposed on him.
Because reasonable grounds exist for DH-KL's appeal, defendants' request for attorney fees and expenses is denied.
Having overruled both of plaintiff's assigned errors, we affirm the judgment of the trial court.
Judgment affirmed.
KENNEDY and DESHLER, JJ., concur.