JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Geauga Park District, ("the Park District"), appeals from the trial court's decision which confirmed the arbitration award finding it had terminated Denise Weisbarth without just cause and ordered her reinstatement. For the reasons that follow, we affirm.
 {¶ 2} This labor dispute concerns the decision of the Park District to terminate one of its Rangers, Denise Weisbarth, on the basis that it believed her to be unfit for duty and because she allegedly violated the Park District's Public Relations Policy and Communications. The arbitrator issued a 39-page Opinion and Award ultimately concluding that the Park District had violated the CBA[1] because it terminated Ms. Weisbarth without just cause. On appeal to the Cuyahoga County Court of Common Pleas, the arbitrator's Opinion and Award was confirmed and the Park District's motion to vacate it was denied by journal entry, which was accompanied by an Order and Decision that is incorporated here. (See R. 18). Given the narrow standard of review and deference we must afford to factual determinations made by the arbitrator, we will limit our discussion of the substantive facts to those necessary to resolve the assigned error below.
 {¶ 3} "I. The trial court erred in failing to vacate the arbitration award presented for confirmation by appellee, given that the arbitrator both exceeded his *Page 4 
powers and imperfectly executed them in his finding that appellant's termination of Denise Weisbarths' employment was `unjust.'"
 {¶ 4} Appellate courts must employ a narrow review of labor arbitration awards, giving deference to an arbitrator's findings.United Paperworkers Internatl. Union, AFL-CIO v. Misco, Inc. (1987),484 U.S. 29; United Steelworkers of America v. Enterprise Wheel CarCorp. (1960), 363 U.S. 593; Goodyear Tire Rubber Co. v. Local 200
(1975), 42 Ohio St.2d 516. "Were the arbitrator's decision to be subject to reversal because a reviewing court disagreed with findings of fact or with an interpretation of the contract, arbitration would become only an added proceeding and expense prior to final judicial determination. This would defeat the bargain made by the parties and would defeat as well the strong public policy favoring private settlement of grievance disputes arising from collective bargaining agreements." Goodyear Tire Rubber Co. v. Local Union No. 220, United Rubber, Cork, Linoleum andPlastic Workers of Am. (1975), 42 Ohio St.2d 516, 520.
 {¶ 5} Grounds for appealing an arbitration award are set forth in R.C.2711.10(A)-(D). In this instance, the Park District relies on the provisions of R.C. 2711.10(D), contending that:
 {¶ 6} "The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Page 5 
 {¶ 7} In the labor arena, an arbitrator's authority is limited by the collective bargaining agreement which governs the parties. Goodyear Tire Rubber Co. v. Local Union No. 220, United Rubber, Cork, Linoleum andPlastic Workers of Am. (1975), 42 Ohio St. 2d 516, 520, quotingUnited Steelworkers of America v. Enterprise Wheel Car Corp. (1960),363 U.S. 593, 597. "An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious, or unlawful." Mahoning County Bd. of Mental Retardation Developmental Disabilities v. Mahoning County TMR EducationAssoc. (1986), 22 Ohio St.3d 80, paragraph 1 of the syllabus.
 {¶ 8} Here, the arbitrator, in his extensive opinion, concluded that Weisbarth "was unjustly terminated * * *." The arbitrator derived this conclusion from his application and interpretation of the collective bargaining agreement; particularly, Article 7 (Disciplinary Procedure), which provides at Section 4 "No employee shall be reduced in pay or position, suspended, removed or reprimanded except for just cause." Additionally, the arbitrator considered and reviewed the Geauga Park District Policy Manual and particularly included Policy 215.1 (Fitness for Duty) and Policy 702.1 (Public Relations Policy and Communications) in toto in the Opinion and Award. The arbitrator's Opinion and Award further detailed the facts as presented during arbitration and included various excerpts and conclusions derived from the reports of Dr. Thurston L. Cosner, Ph.D., Psychologist Eddie E. Myers, and *Page 6 
David I. Falk, Ph.D., who all opined on the issue of Ranger Weisbarth's fitness for duty. All rendered differing opinions on this topic, which ranged from a conclusion that Ranger Weisbarth was unfit for duty due to an untreatable personality disorder to a conclusion that she was fit for duty.
 {¶ 9} The issue that was framed to the arbitrator was "Did the [Park District] violate the [CBA] when it terminated Denise Weisbarth for being `unfit' to perform the duties of her assigned position as well as for a violation of Policy 702.1 `Public Relations Policy and Communication. [sic]'"
 {¶ 10} The arbitrator explicitly found that the Park District did violate the CBA because Weisbarth was unjustly terminated. The arbitrator rendered this finding after considering the evidence produced at the arbitration, which included Fitness for Duty evaluations, Policy 702.1, and testimony concerning Weisbarth's alleged violation of it.
 {¶ 11} It is the Park District's position that the arbitrator exceeded his powers by determining Weisbarth was unjustly terminated because it believes the arbitrator failed to specifically answer: (1) whether she was fit for duty; (2) whether she violated Policy 702.1; and (3) if so, whether termination is the appropriate level of discipline for such violations. The Park District maintains the trial court erred by confirming the award because it believes the trial court employed only a "cursory review" under the wrong standard, specifically the Park District maintains that the *Page 7 
trial court ignored the provisions of R.C. 2711.10(D) upon which the Park District relied. The trial court's comprehensive 15-page opinion belies this contention.
 {¶ 12} The trial court properly noted the applicable provisions of R.C. 2711.10(D) and recognized that the "arbitrator's award draws its essence from a collective bargaining agreement * * *." (R. 18 pp. 9-12). The trial court specifically noted that the Park District "argues that the award must be vacated pursuant to R.C. 2711.10(D) because the Arbitrator exceeded his powers by focusing on whether various employees of [the Park District] conspired against Ms. Weisbarth rather than on whether she was `fit for duty.'" Id. at p. 12. The trial court also cited the Park District's arguments that the arbitrator made factual errors that undermined the reliability of his award such that they constituted material mistake. Id. These included the finding that Ms. Weisbarth did not violate Policy 702.1 and the date on which Weisbarth was promoted to full-time status.
 {¶ 13} In its decision, the trial court's reasoning included the following:
 {¶ 14} "As to [the Park District's] argument that the Arbitrator exceeded his power in violation of R.C. 2711.10(D), the record before this Court shows that he actually was well within the scope of the issue in front of him in deciding this matter. As framed by the [Park District], the issue before the Arbitrator was whether defendant/employer violated the CBA when it terminated Ms. Weisbarth for being unfit for duty as well as for a violation of Policy 702.1. The CBA at issue provides that `no employee shall be * * * removed or reprimanded except for just cause.' * * * It *Page 8 
is common sense that the Arbitrator's finding that the termination was unjust translates to a finding that the Defendant's determination that Ms. Weisbarth's was unfit for duty was improper. Thus, the Arbitrator ruled precisely on the issue presented to him as framed by the Defendant/employer. Further, the award has a direct nexus to the language of the CBA, and is thus proper under Ohio law." Id. at 13-14.
 {¶ 15} The trial court continued its reasoning by reiterating that the law does not allow the parties who have submitted to labor arbitration to re-litigate the underlying facts of the dispute on appeal. Id., citing Huffman v. Valetto (1984), 15 Ohio App.3d 61, 63, citingGoodyear v. Local Union No. 200 (1975), 42 Ohio St.2d 516.
 {¶ 16} A review of the evidence, transcripts, and arbitrator's decision supports the trial court's conclusions in confirming the award. The arbitrator clearly found that Ranger Weisbarth did not violate Policy 702.1 and therefore the Park District's contentions to the contrary are without merit. And, as the Park District notes, no one disputed that the appropriate level of discipline for being unfit for duty was termination. It is equally clear to this Court, as it was to the trial court, that the arbitrator did determine that Wiesbarth was fit for duty notwithstanding the presence of any personality disorder when he found Ranger Weisbarth was unjustly terminated and ordered her reinstatement. *Page 9 
 {¶ 17} The Park District relied on the opinions of Dr. Cosner and Dr. Falk, while the Union relied on the opinion of Eddie Myers, Ed.D.
 {¶ 18} The Park District sent Weisbarth to Dr. Cosner for a fitness for duty evaluation. Prior to her evaluation, Sherwood, a consultant for the Park District, met with Dr. Cosner for about an hour and delivered documents to him. At the arbitration, Dr. Cosner initially maintained that he did not know Sherwood. When pressed on cross-examination about his hour-long consult with Sherwood, Dr. Cosner stated he had forgotten about it. Dr. Cosner opined that Weisbarth was unfit for duty as a Park Ranger due to an untreatable personality disorder .
 {¶ 19} Weisbarth arranged a second evalutation of her fitness for duty with Psychologist Myers who concluded she was fit for duty. A third evaluation was conducted by David I. Falk, Ph.D., who concluded that Weisbarth was unfit for duty due to a personality disorder, which was, however, treatable.
 {¶ 20} The Union maintained that Drs. Cosner and Falk's opinions were unreliable because they were the result of unfair and/or biased evaluations.
 {¶ 21} The arbitrator was troubled most by Dr. Cosner's testimony, which he quoted at length in the Opinion and Order. The arbitrator found "a significant credibility problem" in Dr. Cosner's testimony. The arbitrator also raised a potential conflict of interest with Dr. Cosner even rendering an opinion about Weisbarth's fitness for duty given his communications with Sherwood. He thoroughly documented the rationale for his concerns, which is wholly supported by the record. *Page 10 
When Sherwood, a Park District representative, met with Dr. Cosner he "spent an hour going over [the Park District's] version of the incidents and charges against Ranger Weisbarth prior to her evaluation." (Arbitrator's decision, p. 36). The Park District had also delivered select documents to Drs. Cosner and Falk, both of whom concluded that she was unfit for duty. The arbitrator based his Opinion and Award partly on the fact that the Park District had these ex parte communications and also cited the testimony of the experts who acknowledged that bias can "creep in" to an evaluation. The arbitrator noted "Dr. Falk stated under oath, that, when arriving at his `Fitness for Duty' conclusion, he had given consideration to the documents that had been given to him as background from the Geauga Park District. [In the arbitrator's] Opinion, the Union had every right to question Dr. Falk about the documents, and whether a different version of the incidents would have affected his findings. It must be noted that when the Union Counsel asked if his [Dr. Falk's] findings would have been different, Dr. Falk kept saying that his results would have then been inconsistent with the background documentation that had been provided by the Employer." Id. at. 33. These concerns dovetailed with the Union's position that there was a "vendetta" against Ranger Weisbarth, which provides some logic behind the arbitrator's discussion of events that culminated in the Fitness for Duty examinations in the first place. *Page 11 
 {¶ 22} Accordingly, the arbitrator had an evidentiary basis for his finding that "the psychological testing results may have been tainted by the Employer's decision to provide the psychologists with a one-sided version of events." The arbitrator did not substitute his judgment for that of the employers but rightfully evaluated the credibility and reliability of the opinions upon which the employer relied in making its decision. The arbitrator was within his authority to weigh the conflicting opinions before him and to evaluate the credibility of the witnesses. The trial court properly applied the law by confirming the award and the arbitrator's conclusion that the termination was unjust pursuant to the CBA.
 {¶ 23} The Park District's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., and MELODY J. STEWART, J., CONCUR
[1] "CBA" refers to the Collective Bargaining Agreement between Geauga Park District and Ohio Patrolmen's Benevolent Association dated January 1, 2003 to September 30, 2005. *Page 1