[Cite as *Allied Erecting & Dismantling Co., Inc. v. Qwest Communications Internatl., Inc.*, 2010-Ohio-5939.]
STATE OF OHIO, MAHONING COUNTY
IN THE COURT OF APPEALS
SEVENTH DISTRICT


| | | |
|---|---|---|
| ALLIED ERECTING AND DISMANTLING CO., INC. | ) ) ) | CASE NO. 08 MA 212 |
| PLAINTIFF-APPELLEE | ) ) | |
| VS. | ) ) | OPINION |
| QWEST COMMUNICATIONS INTERNATIONAL, INC., et al. | ) ) ) | |
| DEFENDANTS-APPELLANTS | ) | |


CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas of Mahoning County, Ohio Case No. 2006 CV 182

JUDGMENT: Affirmed.

APPEARANCES:
For Plaintiff-Appellee: Atty. Christopher R. Opalinski
Atty. F. Timothy Grieco
Eckert, Seamans, Cherin & Mellott, LLC
44th Floor, 600 Grant Street
Pittsburgh, PA 15219

Atty. Robert S. Hartford
Atty. Jay M. Skolnick
Atty. Peter B. Grinstein
Nadler, Nadler & Burdman Co., LPA
20 Federal Plaza West, Suite 600
Youngstown, Ohio 44503

For Defendant-Appellant: Atty. Thomas J. Wilson
Comstock, Springer & Wilson Co., LPA
100 Federal Plaza East, Suite 926
Youngstown, Ohio 44503-1811

Atty. David J. Driscoll
Garlin, Driscoll, Howard, LLC
245 Century Circle, Suite 101
Louisville, Colorado 80027

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  December 2, 2010

WAITE, J.

{¶1} Appellants, Qwest Communications International, Inc. and Qwest Communications Corp., appeal the judgment entry of the Mahoning County Court of Common Pleas denying their motion to enter the terms of settlement in this breach of contract action. For the following reasons, the judgment of the trial court is affirmed.

{¶2} Appellants are successors in interest to an easement originally granted to Litel Telecommunications Corporation ("Litel") by Pittsburgh and Lake Erie Railroad Company ("P&LE"), which authorized Litel to install telecommunications equipment on property owned by P&LE in 1985. Appellee, Allied Erecting and Dismantling Co., Inc., who is the successor in interest to P&LE, filed a breach of contract action in January, 2006, alleging that Appellants were in violation of several provisions contained in the easement.

{¶3} At a mediation in the matter conducted by Richard Blair, the common pleas court mediator, the parties reached a settlement that was memorialized in a handwritten memorandum of understanding ("MOU"). It reads, in pertinent part: "This memorandum confirms the essential settlement terms reached this day, which will be further memorialized in settlement documents to be drawn by counsel and consistent with the terms herein." (MOU, p. 1.)

{¶4} In the MOU, the parties agreed that, by November 15, 2007, Appellants would "install and activate facilities off of [Appellee's] property," and "vacate and relinquish to [Appellee] their rights and interests in the subject easement on [Appellee's] property* * *." (MOU, p. 1, ¶1.) The MOU further states that on November 15, 2007, "[Appellants] shall relinquish full control and ownership of its

facilities located on [Appellee's] property * * * and will have no obligation thereafter to [Appellee] or others for the care and maintenance of such facilities." (MOU, p. 2, ¶4.)

**{¶5}** Appellee agreed to pay the sum of $40,000 to Appellants and also agreed that it would not "sell, assign, lease or convey [Appellants'] abandoned facilities as outlined above, to any telecommunications service provider, cable provider, satellite provider, or similar entity on [Appellee's] property." (MOU, p. 2, ¶5.) Appellee reserved the right to "dig up, destroy, modify, sell as scrap, or make any other disposition whatsoever of the facilities except as set forth above." (MOU, p. 2, ¶5.)

**{¶6}** Importantly, the MOU also contained the following agreement: that "any dispute relating to the interpretation of this Memorandum of Understanding or the parties' settlement agreement will be resolved by Rick Blair, whose rulings will be final and binding, until the relocation of [Appellants'] facilities has been completed pursuant to the settlement agreement; provided, however, that after such time, the parties agree that this settlement agreement can be enforced by either party in any court of competent jurisdiction." (MOU, p. 4, ¶11.)

**{¶7}** The parties were not able to agree on a draft of a formalized settlement agreement. Thus, they submitted their opposing positions on several issues relating to the settlement agreement to Blair. The parties concede that Blair was acting as an arbitrator when he heard and resolved the matter, and all parties concede that his decision and opinion, to the extent that it is within the authority granted to him pursuant to the MOU, is final and binding.

{¶8}   Blair issued a decision and opinion, which read, in pertinent part:

{¶9}   "With regard to representation and warranties as to the existing cable and any environmental hazards, [Appellants] shall have no obligation to [Appellee] or others for the care and maintenance of its facilities located on [Appellee's] property said facility being deactivated and abandoned.  [Appellants] further represent[ ] and warrant[ ] that it has only been involved with an approximately one (1) inch fiber optic cable transversing [sic] [Appellee's] property and said cable is not involved with any environmentally controlled vaults, underground manholes or microwave towers. [Appellants] further represent[ ] that its one (1) inch fiber optic cable does not at present violate any local, state, or federal statutes, regulations, orders, direct ordinances or similar promulgations on environmental matters.  [Appellants] further represent[ ] that said one (1) inch fiber optic cable after its abandonment and deactivation presents no risk of environmental contamination as defined by existing Federal or Ohio laws" (herein "representations and warranties" clause.)  (10/9/07 Decision and Opinion, p. 2, ¶3.)

{¶10}  Approximately seven months after the decision and opinion was issued, Appellants filed a motion to enter the terms of settlement.  In the motion they asked the trial court to enter the terms of settlement without the representations and warranties clause.  Appellants contended that the parties' predecessors in interest failed to maintain "as built" drawings of the facilities on Appellee's property.  As a result, neither party knows exactly what facilities are buried on Appellee's property.

Appellants argued that the representations and warranties clause altered the substantive economic terms of the parties' agreement to Appellants' detriment.

**{¶11}** The trial court denied the motion, holding instead that the parties clearly and unambiguously granted authority to Blair to resolve any disputes concerning the MOU or the parties' settlement agreement, and that they agreed that his decision would be final and binding. The trial court held that, "the ruling Mediator Blair made on October 5, 2007 is binding on the parties and that the settlement agreement shall be finalized in accordance with his ruling." (9/26/08 J.E.) The trial court also held that any dispute concerning the finalization of the settlement agreement must be submitted to Blair, consistent with the terms of the MOU.

**{¶12}** On appeal, Appellants argue that the representations and warranties clause somehow imposes liability on Appellants for any environmental problems caused by the existing facilities and that Blair exceeded the authority granted by the MOU when he ruled that the clause should be included in the terms of the final agreement. Appellants further assert that the arbitrator violated their first amendment rights when he essentially forced them to make unfounded representations and warranties regarding the existing facilities. Appellants claim that, in order to determine whether the representations and warranties are true, Appellants would be forced to dig up the facilities at a cost that far exceeds the $40,000 sum agreed to in the MOU. Appellants also contend that Blair violated the mediation confidentiality requirements of the Ohio Mediation Act to the extent that he relied on information he obtained through the mediation process in fashioning his arbitral award. Finally,

Appellants argue that Blair's authority to interpret the MOU terminated when they installed new facilities elsewhere. For the following reasons, the judgment of the trial court is affirmed.

{¶13} Although Appellants listed four separate assignments of error in their brief, they addressed the arguments contained in the first through third assignments of error under a single analysis.

Assignment of Error No. 1

{¶14} "The trial court erred in overruling Defendants' Motion to Enter Terms of Settlement."

Assignment of Error No. 2

{¶15} "The trial court erred in ruling that the Mediator's October 5, 2007 Arbitral Decision and Opinion is binding on the parties."

Assignment of Error No. 3

{¶16} "The trial court erred in ruling that the parties' settlement agreement shall be finalized in accordance with the Mediator's October 5, 2007 Arbitral Decision and Opinion."

{¶17} Mediation is, by definition, "a procedure by which the parties negotiate a resolution to their dispute with the assistance of a third party mediator. If the parties do not reach an agreement, the mediation process is at an end; no resolution may be imposed on the parties." *Oliver Design Group v. Westside Deutscher Frauen-Verein, d.b.a. The Altenheim*, 8th Dist. No. 81120, 2002-Ohio-7066, ¶12. However, in the event that an agreement is reached through mediation, it is as enforceable as any

contractual agreement. *Forysiak v. Laird Marine & Mfg.* (Oct. 19, 2001) 6th Dist. No. OT-00-049, citing *Stark Brinkr, Inc. v. United Riggers*, Inc. (Feb. 22, 2000), 5th Dist. No.1999CA00179. The parties to this appeal do not challenge the fact that the MOU is an enforceable agreement.

**{¶18}** The parties also concede that Blair was acting as an arbitrator when he issued the decision and opinion. A trial court may only vacate an arbitrator's award under the very limited circumstances described in R.C. 2711.10. Relevant to this case, R.C. 2711.10(D) provides:

**{¶19}** "In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

**{¶20}** "* * *

**{¶21}** "(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

**{¶22}** The trial court may not reverse an arbitrator's award simply because the court may disagree with the arbitrator's findings of fact or contractual interpretation. *Goodyear Tire & Rubber Co. v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 520. The standard of review for an appellate court is the same as that of the trial court. *Barnesville Exempted Village Sch. Dist. Bd. of Edn. v. Barnesville Assn. of Classified Employees* (1997), 123 Ohio App.3d 272, 274.

**{¶23}** Courts do not review claims of factual or legal error by an arbitrator in the same manner as an appellate court conducts its review of trial court judgments.

*Southwest Ohio Reg. Transit Auth. v. Amalgamated Transit Union* (2001), 91 Ohio St.3d 108, 110, quoting *United Paperworkers Internatl. Union v. Misco, Inc.* (1987), 484 U.S. 29, 37-38. Review on all levels is much more limited. The Ohio Supreme Court noted the policy behind arbitration and the limited review allowed by the courts:

**{¶24}** "Were the arbitrator's decision to be subject to reversal because a reviewing court disagreed with findings of fact or with an interpretation of the contract, arbitration would become only an added proceeding and expense prior to final judicial determination. This would defeat the bargain made by the parties and would defeat as well the strong public policy favoring private settlement of grievance disputes arising from collective bargaining agreements." *Goodyear Tire & Rubber Co.* at 520.

**{¶25}** Appellants contend that the representations and warranties clause constitutes an entirely new substantive term. They also claim that the clause directly contradicts the language of the MOU, to the extent that the MOU provides that Appellants are no longer responsible for the care and maintenance of the facilities on Appellee's property following the installment of new facilities. In other words, Appellants construe the language of the MOU to mean that their potential liability for any environmental liability absolutely ended when the new facilities were installed.

**{¶26}** Appellee counters that the language of the clause accurately reflects the parties' positions because Appellants represented throughout the pendency of the case that the only facilities they maintained on Appellee's property were harmless fiber optic cables. Appellee posits that the MOU did not in any way shift Appellants'

possible current or future liabilities for any environmental damages caused by the facilities installed by their predecessor in interest, but, rather, maintained the status quo.

**{¶27}** The MOU plainly provides Blair with final and binding authority to resolve "any dispute relating to the interpretation of this Memorandum of Understanding or the parties' settlement agreement." The parties to the MOU were free to limit Blair's authority. Instead, they chose to give him virtually unrestricted authority to resolve any issue arising from interpretation of the MOU and/or the ultimate settlement agreement. Appellants contend that the MOU was intended to shift environmental liability to Appellee. Appellee contends that it was intended to maintain the status quo. While it appears to us that Appellee is correct, this particular matter is beyond our realm. Both arguments require an interpretation of the MOU. Based on the blanket authority granted to Blair to interpret the MOU, we hold that he acted within his authority in fashioning the representations and warranties clause in dispute.

**{¶28}** Appellants also argue that the decision and order violate the confidentiality requirements of the Ohio Mediation Act. See generally, R.C. Chapter 2710. R.C. 2710.06, captioned "Disclosure by mediator" reads, in pertinent part:

**{¶29}** "(A) Except as provided in division (B) of this section and section 3109.052 of the Revised Code, a mediator shall not make a report, assessment, evaluation, recommendation, finding, or other communication regarding a mediation

to a court, department, agency, or officer of this state or its political subdivisions that may make a ruling on the dispute that is the subject of the mediation."

**{¶30}** The parties in the case sub judice were not bound by an arbitration agreement when they filed this action. However, they agreed to arbitration after they completed mediation, and, more importantly, they selected Blair to be their arbitrator. Based on the record, it appears that the parties chose Blair to arbitrate any future issues due to his familiarity with the facts of the case. Consequently, Blair did not violate the Ohio Mediation Act to the extent that he may have considered any facts adduced at mediation in his arbitral award.

**{¶31}** Finally, Appellants argue that the representations and warranties clause is contrary to public policy because it violates their first amendment right to free speech. It is well settled that the first amendment guarantee of free speech, which is applicable to the states through the fourteenth amendment, serves to protect against government action, either federal or state, rather than against the actions of private persons. *Hudgens v. N.L.R.B.* (1976), 424 U.S. 507, 513; *Columbia Broadcasting System, Inc. v. Democratic National Committee* (1973), 412 U.S. 94, 114, 93 S.Ct. 2080, 36 L.Ed.2d 772; *Public Utilities Commission v. Pollack* (1952), 343 U.S. 461. Appellants fail to identify a state actor, here. Although Blair is the common pleas court mediator, he was acting as a private arbitrator selected by the parties in the MOU when he determined that the disputed clause should be incorporated into the final settlement agreement.

**{¶32}** It is apparent that no constitutional violation has occurred as a result of the trial court's enforcement of the settlement agreement if only because Blair was not a state actor engaged in state action. Consequently, Appellants' public policy and First Amendment challenges to the decision and order must fail. Appellants' first three assignments of error are overruled.

Assignment of Error No. 4

**{¶33}** "The trial court erred in ruling that any further disputes concerning the finalization of the parties' settlement agreement shall be submitted to the Mediator for resolution."

**{¶34}** In this assignment, Appellants argue that Blair's authority as an arbitrator ended when Appellants completed their relocation work prior to filing the motion to enter terms of settlement. In so doing, Appellants rely on paragraph 11 of the MOU, which states:

**{¶35}** "The parties agree that any dispute relating to the interpretation of this Memorandum of Understanding or the parties' settlement agreement will be resolved by Rick Blair, whose rulings will be final and binding, until the relocation of [Appellants'] facilities has been completed pursuant to the settlement agreement; provided, however, that after such time, the parties agree that this settlement agreement can be enforced by either party in any court of competent jurisdiction." (MOU, p. 4, ¶11.)

**{¶36}** Appellants argue that, "the use of the term 'settlement agreement' in Paragraph 11 is not a reference to the parties' execution of settlement documents

which will further memorialize those terms," but instead, "the relocation of the facilities pursuant to the agreed-on settlement terms confirmed in the MOU." (Reply Brf., p. 9.) In other words, Appellants claim that the term "settlement agreement" refers to the MOU, itself, rather than the "settlement documents to be drawn by counsel and consistent with the terms herein" referred to on page one of the MOU. Hence, Appellants argue that once they relocated the fiber optic cable sometime prior to the judgment entry, the completion of this relocation divested Blair of his authority under the MOU.

**{¶37}** It is axiomatic that clear and unambiguous contractual language is applied without consideration of extrinsic evidence, and the plain language in a contract is reviewed de novo. *City of Steubenville v. Jefferson Cty.,* 7th Dist. No. 07JE51, 2008-Ohio-5053, ¶22. Here, the language of the MOU is clear and unambiguous. Appellants' suggested interpretation of the phrase "settlement agreement" is misguided. Paragraph 11 of the MOU itself refers to "any dispute relating to the interpretation of this Memorandum of Understanding or the parties' settlement agreement." These terms plainly refer to two different documents. Therefore, the "settlement agreement" referred to in paragraph 11 cannot be the MOU. While the MOU was signed by all parties, the actual settlement agreement was not yet finalized. Appellants' relocation and reliance on it as a means to divest Blair of jurisdiction was, then, premature; relocation could not have been made pursuant to the "settlement agreement" because this document did not yet exist. Accordingly, the trial court did not err in concluding that Blair's authority to interpret

the parties' disputes did not terminate when Appellants relocated the fiber optic cable. Appellants' fourth assignment of error is also overruled.

{¶38} Based on the above, the parties chose to have Blair interpret both the MOU and the settlement agreement and vested him with final and binding authority to resolve any disputes arising from the interpretation of the MOU and/or the drafting of the settlement agreement. Blair did not exceed his authority in fashioning the representations and warranties clause, and the trial court did not err in overruling the motion to enter the terms of settlement accordingly. The trial court did not err when it concluded that Blair had continuing jurisdiction over the terms of the settlement agreement. Thus, all of the assignments of error are overruled and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

DeGenaro, J., concurs in judgment only.