[Cite as *Princeton City School Dist. Bd. of Edn. v. Princeton Assn. of Classroom Educators*, 2013-Ohio-667.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| PRINCETON CITY SCHOOL DISTRICT BOARD OF EDUCATION, | : | APPEAL NO. C-120469 TRIAL NO. A-1008305 |
| Plaintiff-Appellant, | : | |
| | : | |
| vs. | : | *O P I N I O N.* |
| | : | |
| PRINCETON ASSOCIATION OF CLASSROOM EDUCATORS, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Final Judgment Entered

Date of Judgment Entry on Appeal:  February 27, 2013

*Ennis Roberts & Fischer* and *C. Bronston McCord III*, for Plaintiff-Appellant,

*Cloppert, Latanick, Sauter & Washburn, Robert Sauter* and *Lora A. Molnar*, for Defendant-Appellee.

Please note:  this case has been removed from the accelerated calendar.

SYLVIA SIEVE HENDON, Presiding Judge.

{¶1}    The Princeton City School District Board of Education ("the Board") appeals the judgment of the trial court confirming an arbitration award in favor of Princeton Association of Classroom Educators ("PACE").

## Background Facts

{¶2}    The Board is required to offer vocational education to its students.  R.C. 3313.90.  One of the ways that the Board may meet this requirement is to contract for vocational-education services with a joint vocational school district, such as the Great Oaks Joint Vocational School District.  R.C. 3313.90(A)(3).  Because Great Oaks is separately funded by taxpayers, its programming would be provided at no cost to the Board.

{¶3}    Faced with a projected $67.9 million deficit by 2014, the Board sought to replace its own vocational-education programs with programs taught by instructors from Great Oaks.  On April 30, 2009, the Board adopted a resolution abolishing 13 teaching positions and authorizing a contract with Great Oaks to provide vocational-education services.  The reduction in force was expected to save the Board an estimated $1.3 million.

{¶4}    PACE filed a grievance challenging the Board's action.  PACE contended that the Board had violated the parties' collective-bargaining agreement by failing to first offer the vocational-education teaching positions to PACE members under Section 5.17 of the agreement.   That section, entitled "Employment of Substitute Licensed Members," provided:

5.171   The Board may employ as instructors or teachers either directly through a personal contract or indirectly though a contract with a

2

service company, agency or institution to supply instructors, persons who will teach subjects or courses which members are not certified to teach or have declined the opportunity to teach.

5.172    Prior to the employment or engagement of [a] non-member employee, the position(s) sought to be filled shall be posted for not less than fifteen days, and offered to members.

5.173    The Board shall not employ or engage a non-member employee if a qualified member has offered to teach the course and is available to teach the course at the time it is scheduled.

5.174    No individual person shall be employed or engaged to teach, in a non-bargaining unit capacity, more than two classroom periods per day, unless the Board has made every effort to fill the position with a regular certified teacher and can support such effort with documentation.

5.175    The Board's right to employ or engage a non-bargaining unit person shall terminate, as to any individual, as soon as a qualified member is willing to accept the position, but not before the expiration of the contract of employment or engagement, in the case of a company, agency, or institution supplying instructors, by which the non-bargaining unit person is employed or engaged.

{¶5}    PACE asserted that the Board's action violated Section 5.17 because the vocational courses had not been first offered to PACE members and would be taught by non-members.

### *The Arbitrator's Award*

{¶6}   The arbitrator determined that the Board had breached the collective-bargaining agreement by failing to comply with the provisions of Section 5.17.  Specifically, the arbitrator found that the Board had failed to post the vocational-education positions or to make an effort to determine if any PACE members were interested, available and qualified for the positions.

{¶7}   The arbitrator ordered the Board to post for bid by PACE members all of the positions that had been filled by Great Oaks employees.  She further ordered that the Board make whole any member who had lost wages or benefits as a result of the use of Great Oaks teachers.

{¶8}   The Board filed a motion in the Hamilton County Court of Common Pleas to vacate, modify, or correct the arbitration award.  The trial court confirmed the award, and the Board now appeals.

{¶9}   In a single assignment of error, the Board argues that the trial court erred when it confirmed the arbitration award.  Specifically, the Board contends that the arbitrator interfered with the Board's discretion to reduce the number of its teaching positions.

### *Standard of Review*

{¶10} Because the private resolution of disputes through arbitration is favored, judicial review is limited.  *Goodyear Tire & Rubber Co. v. Local Union No. 200*, 42 Ohio St.2d 516, 520, 330 N.E.2d 703 (1975).  Thus, a court cannot vacate an arbitrator's award except under the narrowly defined circumstances set forth in R.C. 2711.10.  *Id.* at paragraph

two of the syllabus. Here, the Board claims that the award should have been vacated under R.C. 2711.10(D) because the arbitrator exceeded her authority.

{¶11} An arbitrator's authority is limited to that granted to her by the parties under the terms of their collective-bargaining agreement. *Id.* at 519. An arbitrator exceeds her authority if the award does not "draw its essence" from the agreement. *Id.* at 519-520, citing *United Steelworkers of Am. v. Ent. Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

{¶12} An arbitrator's award "draws its essence" from a collective-bargaining agreement if "there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious, or unlawful." *Mahoning Cty. Bd. of Mental Retardation and Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 84, 488 N.E.2d 872 (1986). On the other hand, an arbitrator's decision departs from the essence of the parties' agreement where it conflicts with the express terms of the agreement or cannot be rationally derived from those terms. *Ohio Office of Collective Bargaining v. Ohio Civil Serv. Emp. Assn., Local 11, AFSCME, AFL-CIO*, 59 Ohio St.3d 177, 572 N.E.2d 71 (1991), syllabus; *Amalgamated Transit Union, Local 627 v. Southwest Ohio Regional Transit Auth.*, 190 Ohio App.3d 679, 2010-Ohio-5494, 943 N.E.2d 1075, ¶ 8 (1st Dist.).

### Reduction in Force

{¶13} R.C. 3319.17(B)(1) permits a board of education to reduce the number of teachers it employs for "financial reasons." The board has broad discretion in determining what will be a reasonable reduction in force. *Mink v. Great Oaks Inst. of Technology and Career Dev. Bd. of Edn.*, 1st Dist. No. C-050118, 2005-Ohio-6821, ¶ 18, citing *Wolfe v. Bd. of Edn. of the Lawrence Cty. Joint Vocational School Dist.*, 150 Ohio App.3d 50, 2002-

Ohio-6067, 779 N.E.2d 780 (4th Dist.). Moreover, the statute's provisions prevail over any conflicting provisions in a collective-bargaining agreement. R.C. 3319.17(D).

{¶14} In Section 5.11 of the collective-bargaining agreement, the parties recognized the Board's power to reduce its teaching force "for lack of funds, abolishment of positions, or for any reason provided for under the Ohio Revised Code." In addition, the agreement set forth the manner in which the reductions would be made.

{¶15} The arbitrator recognized the Board's power to eliminate teaching positions for financial reasons. She stated, "Although the [Board] can eliminate staff without question or interference under the terms of the Master Contract Agreement, what it cannot do is replace that staff through an outside institution as it has attempted to do here without first complying with the agreed upon provisions of Section 5.17."

{¶16} However, the arbitrator improperly conflated the Board's reduction-in-force power with its obligation to provide PACE members the right of first refusal for teaching positions. Section 5.17 of the collective-bargaining agreement prevented the Board from offering teaching positions to teachers who were not PACE members without first offering the positions to PACE members. So if a qualified member offered to teach the course, the Board could not employ a non-member to do it. But nothing in Section 5.17 prevented the Board from contracting with Great Oaks to provide vocational-education teachers. The Board did not employ the Great Oaks teachers; Great Oaks employed them. The vocational-education positions were not the Board's to fill, so Section 5.17 of the agreement did not require the Board to post the positions for PACE members.

{¶17} Consequently, the record does not support the arbitrator's conclusion that the Board violated the agreement. Because there was no rational nexus between the agreement

and the award, the arbitrator exceeded her authority in ordering it. Therefore, we hold that the trial court erred when it confirmed the arbitrator's award.

### *Conclusion*

{¶18} Therefore, we sustain the assignment of error. We reverse the trial court's judgment. We hereby vacate the arbitration award and enter judgment in favor of the Board.

Judgment accordingly.

**HILDEBRANDT** and **CUNNINGHAM, JJ.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.