SAMBER, Appellee,

v.

MULLINAX FORD EAST, Appellant.

[Cite as *Samber v. Mullinax Ford E.*, 173 Ohio App.3d 585, 2007-Ohio-5778.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2007–L–032.

Decided Oct. 26, 2007.

586

588

Robert J. Foulds and Kevin P. Roberts, for appellee.

Stephen F. Gladstone and Christopher G. Keim, appellant.

CYNTHIA WESTCOTT RICE, Presiding Judge.

{¶ 1} Appellant, Mullinax Ford East, appeals the judgment of the Lake County Court of Common Pleas confirming an arbitration award and denying appellant's motion to vacate the award. For the reasons that follow, we affirm.

{¶ 2} On September 20, 2005, appellee, Michael G. Samber, visited appellant's car dealership in Wickliffe, Ohio, and while there, considered purchasing a used 1997 Chevrolet Blazer. At that time, appellant had advertised in the local newspapers and through its sales personnel represented to appellee that this vehicle was part of appellant's "worry-free" used-car stock, that it had been completely checked and inspected by appellant, and that it had passed all tests.

{¶ 3} Appellee took the Blazer for a test drive that revealed a problem with its brakes. As a result, he decided not to purchase the vehicle and left the dealership. Appellant's salesman called appellee repeatedly at his home and at his place of employment to discuss the sale of the Blazer. To this end, the salesman called appellee three times in one day at appellee's place of employment. When he finally contacted appellee, the salesman promised to repair the brakes of the vehicle. As a result of these promises, appellee returned to the dealership and purchased the Blazer.

{¶ 4} On September 24, 2005, appellee signed a sales agreement for the vehicle. It had a sticker on the window stating that the Blazer came with a "money-back guarantee." The guarantee provided that a customer could return the vehicle for any reason and receive his money back within three days of purchase or 150 miles. Appellant gave additional warranties to appellee, which included the warranties contained in the newspaper advertisements.

{¶ 5} Among the many papers appellee signed in connection with the purchase was a document that stated that the vehicle was purchased "as-is," which, appellant claimed, repudiated all warranties and guarantees. Appellant's used-car manager testified that he was aware that under the law, one cannot sign away a warranty, and that appellee signed the "as-is" document after receiving the guarantees and warranties that were publicly advertised, posted in appellant's showroom, reflected in written documents given to appellee, and given verbally to appellee by appellant's salesmen.

{¶ 6} Appellee's wife, Annette Samber, paid the $6,260 purchase price to appellant by check. She testified that appellant's salesman restated the money-back guarantee and said that if anything went wrong with the Blazer within the next few weeks, appellant would fix it without any cost to them.

{¶ 7} On September 28, 2005, appellee returned the Blazer to appellant, complaining of a front-end leak. At that time, the service department was closed, and the used-car manager told appellee to return another time. The next day, on September 29, 2005, the Blazer's steering locked up while the car was being driven on the open road by appellee's wife, a situation that caused a dangerous road condition and the complete breakdown of the vehicle.

{¶ 8} Appellee called appellant from the road where the Blazer had broken down, and appellant towed the vehicle to its service department. At that point, appellee and his wife had driven the vehicle only 32 miles since it had been purchased.

{¶ 9} On September 30, 2005, appellant's representative promised appellee's wife that by October 1, 2005, appellant would call them to let them know what appellant was willing to do for them. When appellant did not call, she called and

asked that the purchase be rescinded. Appellant refused. On Monday, October 3, 2005, appellee's attorney called appellant's general manager and requested rescission. The manager refused. Appellee's counsel then sent a letter to appellant rescinding the purchase.

{¶ 10} Appellant never returned the Blazer. It cashed appellee's check for $6,260 and has since kept the funds. Further, appellant never transferred the title to the Blazer to appellee.

{¶ 11} On October 17, 2005, appellee filed this action in the trial court, asserting claims for breach of contract, negligence, breach of warranties, and violations of Ohio's Consumer Sales Practices Act ("CSPA"), and praying for, among other things, compensatory and punitive damages and attorney fees.

{¶ 12} On December 9, 2005, appellant filed a motion to stay the proceedings pending arbitration pursuant to an arbitration agreement that appellant had also signed with the various sales documents appellant had presented to him. Appellee opposed the motion to stay, arguing that the arbitration agreement was unconscionable, that appellee's fraud and CSPA claims were unrelated to the sale, and that appellant had never transferred title to the Blazer to appellee.

{¶ 13} On February 2, 2006, the trial court granted appellant's motion to stay regarding all claims asserted by appellee, including contract, tort, and statutory claims.

{¶ 14} Pursuant to appellee's request for clarification of the trial court's February 2, 2006 order, the trial court entered an order on March 10, 2006, that arbitration be conducted by a panel of arbitrators chosen by the Lake County Bar Association. The court stated that the Rules for Arbitration for Lake County would apply to any area not covered by the parties' arbitration agreement. The court held that in the event of an appeal from the panel's decision, the court would appoint an appellate arbitrator as provided for by the arbitration agreement. The agreement provided that the decision of the arbitration panel or, in the event of an appeal, of the appellate arbitrator, would be "final, binding, and conclusive."

{¶ 15} The case went to arbitration on March 31, 2006. The arbitration panel filed its findings of fact and conclusions of law on May 20, 2006. Based upon the panel's findings of fact as outlined above, the panel concluded that appellant had engaged in false advertising and had violated express and implied warranties given to appellee concerning the Blazer, as defined in R.C. 1302.26, 1302.27, and 1302.28. Appellant had misrepresented the mechanical condition of the vehicle and the terms of the warranties. The panel found that these representations were deceptive acts used by appellant in selling this vehicle, in violation of federal law, at 16 C.F.R. 455.1.

{¶ 16} Further, the panel found that appellant had sold the Blazer to appellee without delivering a certificate of title, in violation of R.C. 4505.03, 4505.181, and 4505.19. Appellant also refused to accept appellee's rescission, in violation of R.C. 1345.03(B)(7), and refused to refund the purchase price.

{¶ 17} The arbitrators also found that appellant, a motor-vehicle dealer, had failed to properly disclose the vehicle's mileage, in violation of R.C. 4517.25, and had failed to provide an odometer disclosure, in violation of R.C. 4549.46 and 4549.49. Further, appellant had entered a retail sale of a vehicle without a written contract that contained all the agreements of the parties, in violation of R.C. 4517.26.

{¶ 18} The panel concluded that the remedies provided to appellee under federal and state statutes are cumulative and do not require an election of remedies, pursuant to R.C. 1302.66, 1302.89, 1345.08, 1345.09, and 1345.13, and 15 U.S.C. 2311(b)(1). The actions of appellant regarding odometer readings and mileage disclosure violated 49 U.S.C. 32705 and 49 C.F.R. 580.5. Appellant failed to provide a "buyer's guide" for a used vehicle, in violation of 16 C.F.R. 455.2.

{¶ 19} In addition, the panel found that appellant's actions constituted unfair and deceptive acts, in violation of R.C. Chapters 1345 and 4505 and 49 U.S.C. 32705, 15 U.S.C. 2301, 2302, 2303, 2304, and 2308, and 16 C.F.R. 455.

{¶ 20} The panel found that the foregoing violations under the CSPA entitled appellee to recover treble damages. It also found that appellant had committed multiple statutory and common-law violations and demonstrated disregard for its promises made to appellee, in addition to wrongfully keeping the vehicle, title, and appellee's funds.

{¶ 21} Appellant's conduct was found to be egregious and unnecessarily harmful to appellee, entitling appellee to compensatory damages, punitive damages, treble damages, and attorney fees. The panel entered an award in favor of appellee in the total amount of $105,078. This amount comprises actual damages, i.e., the purchase price, interest, and insurance in the amount of $7,443, trebled for a total of $22,329, plus punitive damages in the amount of $59,544 (eight times actual damages of $7,443), plus attorney fees in the amount of $23,205.

{¶ 22} On June 1, 2006, appellant appealed the arbitrator's decision to the common pleas court. On June 6, 2006, the trial court appointed an appellate arbitrator pursuant to the arbitration agreement. The arbitration agreement provided that the standard of review on appeal to the appellate arbitrator would be the same as in an appellate court of the same jurisdiction, not a trial de novo. On July 20, 2006, appellant filed a brief with the appellate arbitrator, arguing that because the trial court had ordered the case to proceed under the Lake County Arbitration Rules, which provide for nonbinding arbitration and de novo trial to

the common pleas court, the case should be referred back to the common pleas court for de novo trial rather than proceed with binding arbitration before the appellate arbitrator.

{¶ 23} Appellee filed a motion to dismiss due to appellant's failure to file the record on appeal. In appellant's response, it simply argued that the Appellate Rules did not apply and never filed the transcript of arbitration proceedings with the appellate arbitrator or with the trial court.

{¶ 24} The appellate arbitrator entered his opinion on August 25, 2006. In it, he noted that appellant argued in its brief that the rules of arbitration of Lake County, rather than the arbitration agreement, applied so that the decision of the appellate arbitrator would not be binding and the case should be returned to the common pleas court for trial. He held, however, that the case was proceeding under the arbitration agreement, which provided for binding arbitration and prohibited a trial.

{¶ 25} The arbitrator noted that it was ironic that appellant, who had previously attempted to submit the matter to binding arbitration, now sought an order that would avoid arbitration and refer the case to the court for trial after having obtained an adverse arbitration award.

{¶ 26} The arbitrator held that because appellant had failed to file a transcript of proceedings before the arbitration panel, there was no basis for an appeal. He held that without a transcript, he was bound to presume that the facts found by the arbitration panel were true, and he affirmed the panel's decision on the merits.

{¶ 27} Appellant did not file the record of proceedings before the arbitrators between June 6, 2006, and August 25, 2006, while the matter was pending before the appellate arbitrator. Instead, after the appellate arbitrator ruled against appellant, on September 5, 2006, it filed a motion to reinstate the appeal with the appellate arbitrator.

{¶ 28} On October 27, 2006, appellee filed an application to confirm the arbitrators' award. On November 6, 2006, appellant filed a brief in opposition, arguing that the appellate arbitrator had prevented it from presenting "evidence regarding the issues on appeal." On December 15, 2006, appellant filed a motion to vacate the award, arguing that the arbitrators had exceeded their powers by awarding punitive damages in addition to statutory treble damages or by awarding excessive punitive damages.

{¶ 29} The trial court, in its well-reasoned judgment entry dated February 12, 2007, found that punitive damages may be awarded in addition to treble damages. The court further held that R.C. 2315.21(D)(2)(a), which limits punitive damages to "two times the amount of the compensatory damages," by its express terms

applies only to "court" proceedings and so does not apply to arbitrations. Appellant appealed the court's judgment, asserting as its sole assignment of error:

{¶ 30} "The trial court erred as a matter of law when it confirmed the arbitration panel's award and denied appellant's motion to vacate or modify said award."

{¶ 31} Appellant argues that in awarding punitive damages in addition to treble damages, the arbitrators exceeded their authority so that their award must be vacated. We do not agree.

{¶ 32} Initially, we note that a party to a binding arbitration agreement does not have the right to seek judicial review of an award through an appeal to the common pleas court. *Lee v. Heckelmann* (Sept. 8, 1995), 11th Dist. No. 95–L–013, 1995 WL 787403, *1–2. Instead, a party can move the common pleas court only to vacate a binding arbitration award. Further, the basis upon which such an award can be vacated by a common pleas court is extremely limited. Id. R.C. Chapter 2711 does not provide a procedure through which a party can relitigate the action before the common pleas court. *Lee,* supra.

{¶ 33} The only appeal to the court of appeals available to a party to a binding arbitration proceeding is from an order of the common pleas court that confirms, modifies, or vacates such a binding arbitration award. Id.

{¶ 34} According to the parties' arbitration agreement, "arbitration will be the sole method of resolving any claim * * * that arises out of the [parties'] [d]ealings." The agreement provides that the arbitrator's decision is final, binding, and conclusive. It also provides that within 30 days of the arbitrator's decision, either party can appeal to another arbitrator (an "appellate arbitrator"). In the event of an appeal to the appellate arbitrator, his decision is final, binding, and conclusive.

{¶ 35} The Ohio Supreme Court has addressed the limited nature of the review of an arbitration award, as follows:

{¶ 36} "At common law, the courts have almost uniformly refused to vacate an arbitrator's award because of an error of law or fact. It has been held that *the arbitrator is the final judge of both law and facts,* and that an award will not be set aside except upon a clear showing of fraud, misconduct or some other irregularity rendering the award unjust, inequitable, or unconscionable * * *, and that even a grossly erroneous decision is binding in the absence of fraud." (Emphasis added.) *Goodyear v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 522, 71 O.O.2d 509, 330 N.E.2d 703; accord, *McDonald Local School Dist. v. Dull* (Aug. 20, 1999), 11th Dist. No. 98–T–0078, 1999 WL 689732, *4.

{¶ 37} It is the law of this state that "[w]hen disputing parties agree to submit their controversy to binding arbitration, they agree to accept the result, even if it is legally or factually wrong. * * * If the parties could challenge an arbitration decision on the ground that the arbitrators erroneously decided the legal or factual issues, no arbitration would be binding." *Huffman v. Valletto* (1984), 15 Ohio App.3d 61, 63, 15 OBR 90, 472 N.E.2d 740. "Binding arbitration precludes judicial review unless the arbitrators were corrupt or committed gross procedural improprieties. R.C. 2711.10." Id.; accord *Ecker v. Hanusosky* (Sept. 8, 1995), 11th Dist. No. 95–L–024, 1995 WL 787397.

{¶ 38} Consistent with this principle, R.C. 2711.10 provides that a binding arbitration award can be vacated only for certain reasons. These include:

{¶ 39} "(A) The award was procured by corruption, fraud, or undue means.

{¶ 40} "(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.

{¶ 41} "(C) The arbitrators were guilty of misconduct in * * * refusing to hear evidence * * *.

{¶ 42} "(D) The arbitrators exceeded their powers."

{¶ 43} This court has held that the role of an appellate court involving the findings of binding arbitration is extremely limited. R.C. 2711.10 limits judicial review of arbitration awards to determining whether any of these statutory grounds occurred during the arbitration proceedings. *Oil, Chem. & Atomic Workers Internatl. Union, AFL–CIO, Local 7–629 v. RMI Co.* (1987), 41 Ohio App.3d 16, 20, 534 N.E.2d 110.

{¶ 44} This court has further held that in reviewing a common pleas court's confirmation of a binding-arbitration award, an appellate court cannot consider the substantive merits of the award unless the record shows that a material mistake or extensive impropriety occurred during the arbitration proceedings. *Hacienda Mexican Restaurant of Ohio v. Zadd* (Dec. 10, 1993), 11th Dist. No. 92–L–108, 1993 WL 548066, *2.

{¶ 45} In *Hacienda Mexican Restaurant*, the appellant argued that the arbitrators' legal analysis was incorrect. In concluding that the appellant's argument failed to state a basis for reversing the order of the common pleas court, this court held:

{¶ 46} "In applying the foregoing standards, the courts of this state have not attempted to specifically define the terms 'material mistake' and 'extensive impropriety.' A review of the various cases indicates that these terms are often employed as synonyms for the grounds set forth in R.C. 2711.10. * * * [I]t is abundantly clear that an appellate court will not reverse the affirmance of an

arbitration award on the basis that the award was against the manifest weight of the evidence, or *that the arbitrator's legal analysis was incorrect.* * * *

{¶ 47} "In light of this standard of review, this court has further held that in the absence of any evidence indicating any material mistake or extensive impropriety, this court lacks the authority to grant any type of relief requested by the appellant. * * * Under this analysis, *even if this court were to conclude that the legal analysis applied by the arbitrators was incorrect, the judgment of the court of common pleas would still be affirmed because this is not a basis for vacating the award under the statute."* (Emphasis added.) Id. at *2.

{¶ 48} In *Ecker,* 11th Dist. No. 95–L–024, 1995 WL 787397, this court affirmed the trial court's decision confirming an arbitration and denying the nonprevailing party's request for the trial court to review the panel's decision on the ground that the panel had exceeded its power by awarding damages that were three-and-one-half times the amount of the actual damages. This court stated that it would not address the merits of appellant's arguments because they do not state proper grounds for reversing the arbitration award.

{¶ 49} Appellant has not asserted that any material mistake or extensive impropriety occurred during the arbitration proceeding. Instead, it merely challenges the merits of the arbitrators' legal analysis in awarding appellee punitive damages in addition to treble damages and awarding punitive damages in an amount eight times the amount of appellee's actual damages. In arguing that arbitrators exceed their powers when they engage in an incorrect legal analysis, appellant asks us to ignore the well-established authority to the contrary. There simply is no authority for the argument asserted by appellant.

{¶ 50} Appellant argues that the arbitrators exceeded their authority in awarding punitive damages in violation of Ohio law. In determining whether an arbitrator exceeded his authority, "the trial court must first determine whether the arbitrator's award draws its essence from the [arbitration] agreement; that is, whether there is a rational nexus between the [arbitration] agreement and the award. * * * If there is a rational nexus, the trial court must then determine whether the award is arbitrary, capricious, or unlawful." *Elyria City School Dist. Bd. of Edn. v. Ohio Assn. of Pub. School Emps.* (Sept. 15, 1993), 9th Dist. No. 93CA005563, 1993 WL 347140, *2.

{¶ 51} When the issue submitted for arbitration deals with an issue for which arbitration is provided in the arbitration agreement, there is a rational nexus between the agreement and the award. Id. at *2. The arbitration agreement here provided for arbitration for any claim appellee had arising from the parties' "dealings." Thus, a rational nexus existed between the arbitration agreement and the award.

{¶ 52} Without the transcript of proceedings before the arbitrators, we cannot determine whether the award was arbitrary. However, the findings of fact demonstrate that there was a factual basis for the award and that it was not arbitrary, capricious, or unlawful.

{¶ 53} Appellant argues that Ohio courts reject awards of punitive damages when treble damages are also awarded. The Ohio Supreme Court has recognized that punitive damages and treble damages may both be awarded in an appropriate case under the Consumer Sales Practices Act. In *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, the court held:

{¶ 54} "R.C. 1345.09(A)'s use of the unmodified term 'damages' seems to allow for an award of punitive damages for a CSPA violation committed with actual malice. Any award for punitive damages, however, would not be subject to trebling under R.C. 1345.09(B), because punitive damages are not 'actual damages.' Nevertheless, 'actual damages' may be trebled as a penalty against a supplier if the supplier commits an act already prohibited by rule or by a prior court opinion maintained by the Attorney General's office." Id. at ¶ 23.

{¶ 55} We note that appellant failed to file the transcript of proceedings before the arbitration panel. In *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 15 O.O.3d 218, 400 N.E.2d 384, the court held that the duty of providing a transcript for appellate review falls exclusively on the appellant because an appellant bears the burden of showing error by reference to matters in the record. Id. at 199, 15 O.O.3d 218, 400 N.E.2d 384. An appellate court has nothing to pass on if the appellant fails to provide a transcript, and that court has no choice but to presume the validity of the lower court's proceedings. Id.

{¶ 56} In ruling on a motion to vacate an arbitration award, a common pleas court must base its decision on the record of the arbitration proceeding, including a transcript of the arbitration hearing. *Cleveland Constr. Interiors, Inc. v. Ruhlin Co.* (Apr. 5, 1991), 11th Dist. No. 90–L–14–060, 1991 WL 54150, *2; see also *Chester Twp. v. Fraternal Order of Police* (1995), 102 Ohio App.3d 404, 408, 657 N.E.2d 348.

{¶ 57} Regularity of the arbitration proceedings and the award must be presumed by a court when a complete record of the evidence and arguments presented at the arbitration hearing is not provided to the court. *Motor Wheel Corp. v. Goodyear Tire & Rubber Co.* (1994), 98 Ohio App.3d 45, 55, 647 N.E.2d 844.

{¶ 58} Therefore, we must presume the regularity of the proceedings before the arbitration panel. In so doing, we presume that evidence was

presented that would support the arbitrators' conclusion that appellee was entitled to an award of punitive damages.

{¶ 59} Appellant's argument that there was no evidence of actual malice also fails. First, because appellant failed to file the transcript, we must presume that evidence of actual malice was presented in support of the panel's award of punitive damages. However, we note that the panel did make findings that would support a finding of actual malice. In *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, the court held that actual malice may be evidenced by a conscious disregard for the rights and safety of others that has a great probability of causing substantial harm. Id. at 336, 512 N.E.2d 1174.

{¶ 60} Appellant was aware that it had sold a defective vehicle to appellee. It had made express warranties and gave appellee a money-back guarantee. Yet after appellee advised appellant of the substantial, multiple malfunctions of the Blazer, one of which resulted in a breakdown on the open road, causing a dangerous situation for appellee, appellee's wife, and the motoring public, appellant refused to give a money-back guarantee and in fact kept the vehicle, the title, and appellee's money. We note that the arbitrators found that the evidence demonstrated appellant's disregard for its promises made to appellee. The panel found that appellant had engaged in acts of deception and misrepresentation and that its conduct was "egregious." It is difficult to imagine a more flagrant case of a complete disregard for the rights and safety of others.

{¶ 61} Next, appellant argues that there was no finding that appellant was liable for any tortious conduct that would serve as a predicate for punitive damages. Again, without the transcript, we are bound to presume that evidence was submitted that would support the requirements for such an award. It is worth noting that the arbitrators found that appellant committed "multiple violations of statutory and common law violations as borne out by the evidence in this case." In any event, the panel expressly found that appellant had made misrepresentations and engaged in deceptive conduct with respect to appellee. The panel also found that appellant had violated various state and federal statutes. Without a transcript, we cannot determine what evidence was presented that would have supported such an award. The burden was on appellant to file the transcript. Without that filing, we are bound to presume the regularity of the panel's proceedings and the evidentiary support for its award.

{¶ 62} We note that appellant has failed to present any authority to support its argument that the statutory limitation of punitive damages applies in the context of arbitration proceedings. R.C. 2315.21(D)(2)(a), which limits the amount a court may award for punitive damages, simply has no application in the context of arbitration proceedings in which the panel is the final judge of both the facts and

the law and in which the panel's legal analyses cannot be challenged on appeal. Appellant's appeal is from the denial of its motion to vacate. As such, it is not entitled to challenge the legal analysis of the panel.

{¶ 63} Next, appellant argues that it was entitled to have the arbitration award vacated because the appellate arbitrator committed "gross misconduct" in not allowing it to present evidence, in violation of R.C. 2711.10(C). That section provides that an arbitration award may be set aside when the arbitrators are guilty of misconduct in refusing to hear evidence. In making this argument, appellant misconstrues the function of the appellate arbitrator. The arbitration agreement provides that the "Appellate Arbitrator shall apply the same standard of review as an appellate court in the same jurisdiction * * *." An appellate court in this and all other Ohio appellate districts does not generally "hear evidence." It resolves controversies based upon a record of proceedings in the trial court. Thus, the appellate arbitrator could not have been guilty of the gross misconduct appellant alleges because it did not have the authority to hear evidence.

{¶ 64} While appellant suggests that the appellate arbitrator never gave it the opportunity to file the transcript, there was nothing preventing it from doing so during the three months that the appellate arbitrator exercised jurisdiction over the matter and during the following two-month period during which the trial court considered appellant's motion to vacate. Appellant offers no explanation why it failed to file the transcript during that time, particularly since appellee had objected to appellant's appeal due to its failure to file the transcript.

{¶ 65} We note that on appeal to the appellate arbitrator, appellant challenged the authority of the appellate arbitrator to consider this matter and argued that the case should be returned to the common pleas court for trial de novo. Thus, it is reasonable to conclude that appellant as a matter of strategy failed to file the transcript in the arbitration because it was attempting to terminate the arbitration proceedings it had previously fought to secure in an effort to secure a more favorable forum.

{¶ 66} There is no evidence in the record to support appellant's assertion that it was prevented from making its arguments to the appellate arbitrator. Nor are there any journal entries of the trial court evidencing this. Because there is no transcript of proceedings or any evidence supporting this argument, we cannot address it. It is, however, clear that appellant had five months to file the transcript and failed to do so. We cannot rely on the unsupported argument of counsel in this regard, particularly when it is not stipulated by counsel. Because there is no transcript or evidence of proceedings before the appellate arbitrator, we must presume their regularity. We do, however, note that appellant concedes that it filed a brief before the appellate arbitrator, asserting the errors allegedly

made by the arbitration panel. We must presume that the appellate arbitrator considered this brief and the arguments contained therein in rendering his decision.

{¶ 67} For the reasons stated in the opinion of this court, the assignment of error is not well taken. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Judgment affirmed.

COLLEEN M. O'TOOLE and TIMOTHY P. CANNON, JJ., concur.